[No. H008927. Sixth Dist. Mar. 10, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN ANTHONY BOLANDER, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication only as to: 1. Introduction; 2. Trial Evidence, subparts A, E; 4. Sufficiency of the Evidence as to Count 5, and; 11. Disposition, and the separate concurring opinion.

COUNSEL

Richard J. Ingram, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Christopher J. Wei and Sharon Rosen Leib, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### COTTLE, P. J.—

1. *Introduction*

A jury found defendant John Anthony Bolander guilty of seven counts of child molestation; in each case, the victim was his nine-year-old stepson

Ryan A., born January 23, 1982. Defendant had been charged by information with six counts of committing a lewd act with a child under fourteen years of age (Pen. Code, § 288, subd. (a) [counts 1, 2, 4, 6, 7, 8])[1] and two counts of using force to commit a lewd act with a child under fourteen years of age (§ 288, subd. (b) [counts 3, 5]). The information alleged two prior prison terms (§ 667.5, subd. (b)). The jury could not reach a verdict as to count 4; that count was dismissed after the court declared a mistrial. At to count 3, the jury found defendant guilty of the lesser included offense (§ 288, subd. (a)). As to the remaining six counts, defendant was found guilty as charged. In a bifurcated proceeding, defendant admitted the section 667.5, subdivision (b) allegations. After his motion for new trial was denied, defendant was sentenced to 25 years in state prison. On appeal defendant contends the trial court erred by (1) denying the motion for new trial, (2) stating inadequate reasons for imposing fully consecutive sentences, (3) failing to instruct sua sponte on necessarily included offenses, (4) failing to instruct pursuant to CALJIC No. 2.02 on specific intent with regard to count 3, and (5) instructing the jury in a confusing sequence. Defendant also claims the evidence was insufficient to support his conviction for count 5 and that CALJIC Nos. 2.00, 2.01, and 2.90 are constitutionally deficient.

## 2. *Trial Evidence*

### A. *Background*

At the time of the molestations, all of which occurred between May and November of 1990, defendant had been married to Ryan's mother Janet for less than a year,[2] and defendant, Janet, Ryan, Ryan's 17-year-old sister Janae, and Janae's two-year-old son Joshua were living in a two-bedroom house in Scotts Valley. Ryan usually slept on the living room sofa bed; occasionally he slept in Janet and defendant's bed in the master bedroom when they stayed up to watch television in the living room. Janae slept on a twin daybed in a room she shared with her son. When defendant's 16-year-old daughter Shawna joined the family in November of 1990, she slept on the bottom portion of Janae's daybed.[3]

At the time in question, defendant worked every day as a contractor. His work schedule was flexible; he came home between 3:30 and 8:30 p.m.; on

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] In an effort to simplify our discussion of the facts and the law, members of the family will be referred to by their first names.

[3] When defendant and Janet first moved to Scotts Valley in July 1990, they lived in one little room with Ryan. Ryan slept on the bed; Janet and defendant slept on the floor. Occasionally, Ryan would awake, hear noises, and then go back to sleep. Janet testified she and defendant would occasionally make love at night after Ryan was asleep.

the other hand, Janet had set hours at two jobs; she worked a twelve-hour shift as a private duty nurse Tuesdays through Thursdays from 8 a.m. to 8 p.m. and a four-hour shift on Mondays and Fridays from noon to 4 p.m. as a private care-giver in a patient's home. Ryan testified there were times he came home from school when defendant was the only other person there. Defendant often took Ryan to work with him on weekends, paying him to pick up wood and showing him how to nail things. Initially, Ryan enjoyed these outings. After a few months, when Ryan no longer wanted to join defendant, defendant promised to buy Ryan a Nintendo if Ryan would go to work with him.

B.-D.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

E.   *Count 5*:

A day in the fall of 1990, Ryan was asleep on the top portion of Janae's daybed when defendant awakened him and asked if Ryan wanted to watch television. Defendant then pulled Ryan's shorts down. Ryan tried to pull them back up, but defendant bent Ryan over, put his hand on Ryan's waist, pulled Ryan towards him, and put his penis in Ryan's anus. Ryan did not cry although defendant was hurting his anus. When his mother returned home, Ryan got permission to visit a friend. When he came home, he told his mother what defendant had done to him.

F.-H.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

3.   *Motion for New Trial**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

4.   *Sufficiency of the Evidence as to Count 5*

■   Defendant contends the jury's finding that the crime charged in count 5 was committed by either force or duress is not supported by substantial evidence.

In order to establish "force" within the meaning of subdivision (b) of section 288, the prosecution must show the defendant "used physical force

---

*See footnote, *ante*, page 155.

substantially different from or substantially greater than that necessary to accomplish the lewd act itself." (*People* v. *Cicero* (1984) 157 Cal.App.3d 465, 474 [204 Cal.Rptr. 582]; *People* v. *Gilbert* (1992) 5 Cal.App.4th 1372, 1381 [7 Cal.Rptr.2d 660].)

Here, Ryan testified defendant pulled his shorts down. Ryan tried unsuccessfully to pull his shorts up. Defendant then bent Ryan over and put his penis inside Ryan's anus. Defendant put his hands on Ryan's waist and "pulled" Ryan's waist "towards him while he was doing it." Applying the principles set forth in *Cicero*, we conclude that defendant's acts of inhibiting Ryan from pulling his shorts back up, bending Ryan over, and pulling Ryan towards him constitute force within the meaning of subdivision (b) of section 288, in that ". . . defendant applied force in order to accomplish the lewd acts without the victim's consent." (*People* v. *Neel* (1993) 19 Cal.App.4th 1784, 1790 [24 Cal.Rptr.2d 293].) We recognize that our conclusion is inconsistent with dicta in two recent opinions published by our district on this issue.

In *People* v. *Schulz* (1992) 2 Cal.App.4th 999, 1004 [3 Cal.Rptr.2d 799], and in *People* v. *Senior* (1992) 3 Cal.App.4th 765, 774 [5 Cal.Rptr.2d 14], a panel of this district affirmed section 288, subdivision (b) convictions based on duress but in dicta suggested the evidence of force was insufficient because lewd acts with a child under age 14 "almost always involve some physical contact other than [the lewd act itself]" (*Senior, supra,* 3 Cal.App.4th at p. 774.) and ". . . a modicum of holding and even restraining cannot be regarded as substantially different or excessive 'force' [beyond the force required for the lewd act.]" (*Schulz, supra,* 2 Cal.App.4th at p. 1004.) The court in *Schulz* and *Senior* acknowledged that the interpretation of the "force" requirement of subdivision (b) of section 288 was contrary to precedent. (*Schulz, supra,* 2 Cal.App.4th at p. 1004; *Senior, supra,* 3 Cal.App.4th at p. 774.) Recently, at least two districts have disagreed with the dicta in *Schulz* and *Senior* (*People* v. *Babcock* (1993) 14 Cal.App.4th 383, 388 [17 Cal.Rptr.2d 688]; *People* v. *Neel, supra,* 19 Cal.App.4th 1784, 1790), and the People ask us "to revisit this issue and reconsider [the] prior rulings in light of" *Babcock* and *Neel.*

In *Schulz,* the defendant entered the victim's room and tried to get her off her bed. When she ran to a corner of her room, the defendant grabbed her and held her arm as she screamed and cried. While holding the victim's arm, the defendant touched her breasts and vaginal area. (2 Cal.App.4th at p. 1003.) In concluding this was insufficient evidence of force within the meaning of section 288, subdivision (b), the court reasoned, "We do not regard as constituting 'force' the evidence that defendant grabbed the victim's arm and held her while fondling her. . . . The 'force' factor differentiates the charged sex crime with the ordinary sex crime. Since ordinary

lewd touching often involves some additional physical contact, a modicum of holding and even restraining cannot be regarded as substantially different or excessive 'force.' " (2 Cal.App.4th at p. 1004.)

In *Senior*, the defendant orally copulated the victim's vagina and made the victim orally copulate his penis. The victim testified that when ". . . she tried to pull away when he [the defendant] licked her vagina. He pulled her back. She tried to pull away from sucking his penis. He held her shoulders." (3 Cal.App.4th at p. 771.) Relying on its interpretation of force as set forth in *Schulz*, the court concluded that it did "not regard as constituting 'force' the evidence that defendant pulled the victim back when she tried to pull away from the oral copulations," finding significant the fact that "[t]here was no evidence here of any struggle, however brief." (*Id.*, at p. 774.)

As noted above, *Babcock* and *Neel* disagreed with the dicta in *Schulz* and *Senior*. The court in *Babcock* reasoned that the flaw in the analyses in *Schulz* and *Senior* "is in their improper attempt to merge the lewd acts and the force by which they were accomplished *as a matter of law.*" (*People* v. *Babcock, supra*, 14 Cal.App.4th at p. 388.) The court then noted that the defendants' acts of force in *Schulz* and *Senior* were not "necessarily an element" (*ibid.*) of the lewd acts which ensued. *Neel* relied heavily upon the reasoning in *Babcock*, and then added its own criticism of the rationale of *Schulz* and *Senior*: "As explained in *Cicero*, the element of force in [section 288,] subdivision (b) is intended as a requirement that the lewd act be undertaken without the victim's consent by means of 'physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' [Citation.] In our view, it is readily apparent that the force used in *Schulz* and *Senior* was applied to accomplish the lewd acts against the will of the victims and constituted physical force substantially different from and substantially in excess of that required for the lewd acts. A defendant may fondle a child's genitals without having to grab the child by the arm and hold the crying victim in order to accomplish the act. Likewise, an assailant may achieve oral copulation without having to grab the victim's head to prevent the victim from resisting. Simply stated, such force is different from and in excess of the type of force which is used in accomplishing similar lewd acts with a victim's consent." (*People* v. *Neel, supra*, 19 Cal.App.4th at p. 1790.)

Here, the force defendant used on Ryan to accomplish the act of sodomy is no greater than that used to hold a crying victim who was trying to escape in a corner or that used to pull and hold a victim's shoulders to prevent her from resisting. However, in light of convincing criticisms set forth in *Babcock* and *Neel*, we respectfully disagree with the interpretation of the "force" requirement of section 288, subdivision (b) discussed in *Schulz* and

*Senior.* We instead join those courts which have held that "[i]n subdivision (b), the element of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person is intended as a requirement that the lewd act be undertaken without the consent of the victim. (*Cicero, supra,* 157 Cal.App.3d at pp. 475-476, 477-484.) As used in that subdivision, 'force' means 'physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' (*Id.,* at p. 474; cf. *People* v. *Quinones* (1988) 202 Cal.App.3d 1154, 1158 . . . ." (*People* v. *Neel, supra,* 19 Cal.App.4th at p. 1787.) Applying this standard to the facts at hand, we conclude that defendant's acts of overcoming the victim's resistance to having his pants pulled down, bending the victim over, and pulling the victim's waist towards him constitute force within the meaning of subdivision (b) "in that defendant applied force in order to accomplish the lewd act[] without the victim's consent." (19 Cal.App.4th at p. 1790.) Accordingly, we shall affirm the judgment as to count 5.

In light of our conclusion that defendant's acts constitute force within the meaning of section 288, subdivision (b), we need not address defendant's contention that the evidence is insufficient to prove that defendant used duress to accomplish the act of sodomy. (See *People* v. *Guiton* (1993) 4 Cal.4th 1116 [17 Cal.Rptr.2d 365, 847 P.2d 45].)

5.-10.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### 11.  *Disposition*

The judgment is affirmed.

Bamattre-Manoukian, J., concurred.

**MIHARA, J.,** Concurring.—I concur in the judgment and the rationale of the lead opinion except for its analysis of the sufficiency of the evidence of "force" to support count 5. With respect to that issue, I would suggest an alternative analysis.

A lewd act (Pen. Code,[1] § 288, subd. (a)) comes within the provisions of section 288, subdivision (b) if the act was committed "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person . . . ." (§ 288, subd. (b).) The jury in this case

---

*See footnote, *ante,* page 155.

[1] Subsequent statutory references are to the Penal Code unless otherwise specified.

was instructed on this element of the offense and was further instructed that "[t]he term 'force' means physical force that is substantially different from or substantially greater than that necessary to accomplish the lewd act itself." (CALJIC No. 10.42.) The jury concluded that the act charged in count 5 violated section 288, subdivision (b). Defendant claims that there was insufficient evidence of "force" to support this finding.

The origin of the definition of "force" contained in CALJIC No. 10.42 is the Third District Court of Appeal's decision in *People* v. *Cicero* (1984) 157 Cal.App.3d 465 [204 Cal.Rptr. 582]. The *Cicero* court posited that " '. . . force' should be defined as a method of obtaining a child's participation in a lewd act in violation of a child's will . . . ." (*Id.* at p. 476.) The court acknowledged that this proposition was somewhat at odds with the legislative history of the statute since, in 1981, the original statutory language requiring that the act be "against the will of the victim" was deleted by the Legislature. However, the court concluded that ". . . the most plausible purpose of the 1981 amendment was that it was designed to eliminate any requirement that the People prove resistance by the victim in a prosecution for violation of [section 288,] subdivision (b)." (*Id.* at p. 481.) The *Cicero* court found that ". . . the Legislature did not intend [by its 1981 amendment of subdivision (b)] to eliminate from subdivision (b) the requirement that a lewd act be undertaken against the will of the victim where the victim suffers no physical harm." (*Id.* at p. 480, italics added.) Based on this analysis of the Legislature's intent, the *Cicero* court reached the following conclusion. "Where a defendant uses physical force to commit a lewd act upon a child under the age of 14, and the child suffers physical harm as a consequence, the defendant has committed a lewd act 'by use of force' under subdivision (b). Consent is no defense. Where no physical harm to the child has occurred, the prosecution has the burden of proving (1) that the defendant used physical force substantially different from or substantially in excess of that required for the lewd act and (2) that the lewd act was accomplished against the will of the victim. . . . [I]t is an affirmative defense that the victim knowingly consented to the lewd act." (*Id.* at p. 484.)

In my view, the analysis in *Cicero* diverges from both the Legislature's intent and the plain language of the statute. The result of this analysis is a holding which misconstrues the statute and provides a misleading definition of force. Furthermore, the utilization of *Cicero*'s definition of force in CALJIC No. 10.42 poses a serious danger of confusing jurors. *Cicero*'s legislative intent analysis led it down the wrong path. The more apparent and equally plausible legislative intent behind the 1981 amendment of section 288, subdivision (b) was to obviate the need for the prosecution to (1) prove lack of consent and (2) rebut a defense claim of reasonable good faith belief

in consent (the so-called "*Mayberry*"[2] defense). Since the Legislature unambiguously eliminated lack of consent as an element of the offense in 1981, I cannot agree with *Cicero*'s conclusion that this element remains a part of the prosecution's case in those cases where the use of force causes no physical harm.[3] Once lack of consent was eliminated as an element of the prosecution's case, it was not reborn as a part of the definition of force. Lack of consent is not an element of the offense prohibited by section 288, subdivision (b), and the victim's consent is not an affirmative defense to such a charge. The victim's consent or lack thereof is simply immaterial.

What then does "force" mean? The term "force" has the same meaning in section 288, subdivision (b) as it has in section 211 (robbery) and section 261, subdivision (a)(2) (rape). Force is not equated with, or given meaning by, lack of consent in prosecutions for robbery or rape. When the prosecution seeks to show that a taking or an act of sexual intercourse was accomplished by means of force, the prosecution must prove both lack of consent and force in a rape or robbery case. It is of course true that in rape and robbery prosecutions, as in prosecutions under section 288, subdivision (b), force cannot be established without evidence of "something more" than just the prohibited act. "[S]omething more is required [for a robbery conviction] than just that quantum of force which is necessary to accomplish the mere seizing of the property." (*People* v. *Morales* (1975) 49 Cal.App.3d 134, 139 [122 Cal.Rptr. 157].) However, *Cicero*'s attempt to define the "something more" which is required in a section 288, subdivision (b) prosecution is so ambiguous that it confuses more than it clarifies.

For purposes of appellate review of the sufficiency of evidence of force, the standard in a section 288, subdivision (b) case need not be any different than it is in a robbery or rape case. A defendant uses "force" if the prohibited act is facilitated by the defendant's use of physical violence, compulsion or constraint against the victim other than, or in addition to, the physical contact which is inherent in the prohibited act. (Cf. Webster's Collegiate Dict., *supra*, p. 455.) The main distinction between this definition and the one propounded in *Cicero* is the omission of the requirement that the force be "substantially different from or substantially in excess of" the physical contact which is inherent in the act. The evidentiary key to whether an act was forcible is not whether the distinction between the "force" used to

---

[2] *People* v. *Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337].

[3] Force is a general term. When force causes physical harm, it is commonly called "violence." (Webster's Collegiate Dict. (10th ed.) p. 1319.) A section 288, subdivision (b) offense may be predicated on either force or violence. (§ 288, subd. (b).) If the Legislature meant to require lack of consent whenever force did not cause physical harm, it could have said so by requiring lack of consent where there was "force" but not where there was "violence."

accomplish the prohibited act and the physical contact inherent in that act can be termed "substantial." Instead, an act is forcible if force facilitated the act rather than being merely incidental to the act. It follows that since the definition of force in a section 288, subdivision (b) prosecution is the same as the definition of force in a robbery or rape prosecution, there is no need for a jury instruction defining force. "Force" has "no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors." (*People* v. *Anderson* (1966) 64 Cal.2d 633, 640 [51 Cal.Rptr. 238, 414 P.2d 366] [no need for instruction defining "force" in a robbery prosecution].)

The facts of this case amply support the jury's implied finding that defendant used force to facilitate his sodomization of Ryan. The lewd act was facilitated by defendant's constraint of Ryan, including defendant's conduct in pulling Ryan towards him so that he could sodomize Ryan. Defendant's use of force in this manner was not merely incidental to the sodomy. Consequently, the evidence supports count 5.

Appellant's petition for review by the Supreme Court was denied June 15, 1994. Mosk, J., was of the opinion that the petition should be granted.