122 Cal.Rptr.2d 818 (2002)
100 Cal.App.4th 917
The PEOPLE, Plaintiff and Respondent,
v.
Bryant D. GRIFFIN, Defendant and Appellant.
No. B152731.
Court of Appeal, Second District, Division Seven.
July 30, 2002.
Review Granted October 23, 2002.
*819 Patricia A. Scott, under appointment by the Court of Appeal, San Francisco, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Ana R. Duarte and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
JOHNSON, J.
A jury convicted appellant, Bryant D. Griffin, of five counts of child molestation and of one count of forcible rape. He contends his rape conviction must be reversed because the evidence of "force" was insufficient as a matter of law to sustain the conviction. He also claims the trial court erred in failing to instruct sua sponte on the legal definition of "force" required for a forcible rape conviction. In addition, appellant argues he was denied due process from admission of evidence of prior sexual offenses and by the court's instruction regarding permissible uses of this propensity evidence. Finally, appellant claims the court erred in failing to rule on the merits of his new trial motion based on ineffective assistance of counsel. We agree there was insufficient evidence of "force" to sustain the conviction for forcible rape and reverse appellant's conviction on this count. However, we find no other prejudicial error and accordingly affirm the judgment in all other respects.

FACTS AND PROCEEDINGS BELOW
Latasha J. had known appellant since she was five years old. From 1992 appellant and Latasha's mother had an on again, off again, relationship.
In 1992 appellant lived with Latasha's mother and her children in an apartment on Marengo Avenue in Pasadena. Appellant started molesting Latasha in 1994 when she was between ten and eleven years old. According to Latasha, the pattern of molestations was always the same. Typically, appellant would first have Latasha touch his penis. Then appellant would put his hand and then his mouth on Latasha's vagina. Latasha complained to her grandmother, aunt and schoolteacher. However, she did not tell her mother because appellant had repeatedly told Latasha her mother would not believe her.
Latasha's teacher reported the incident to the police. Ultimately, appellant pled no contest to a misdemeanor charge of annoying or molesting a child under the age of 18.[1] Appellant received probation *820 and the court issued an order to stay away from Latasha. Social workers arranged to have Latasha live with her maternal grandmother.
Because Latasha's mother's relatives did not like appellant she believed they had convinced Latasha to make up these charges against appellant.
Because of her mother's response and the fact appellant only received probation, Latasha eventually came to believe there was no reason to report further misconduct because nothing would happen anyway.
In the meantime, Latasha's mother and brother moved into another apartment in Pasadena. Appellant kept clothes at this residence and often spent the night there. Latasha moved back in with her mother, brother and appellant when she was 13 years old and attending continuation school. She typically arrived home from school around 1:30 p.m. Her mother would be at work. Sometimes her brother would be at work as well. Appellant worked a series of temporary jobs and kept irregular hours. On several afternoons Latasha would be at home alone with appellant.
Between 1996 and 1997 appellant molested Latasha once or twice a week, "whenever he felt like it." Again, the molestation followed a general pattern. Appellant would grab Latasha's hand and place it on his penis until he had an erection. He would then digitally penetrate Latasha's vagina and orally copulate her. Appellant often told Latasha if she complained to her mother her mother would not love her anymore, and would not believe her in any event. Latasha told no one about the abuse, believing nothing would come of it anyway if she did.
Appellant's sexual activity with Latasha continued until mid-June 1998 when Latasha got a boyfriend and spent most of her time away from her mother's residence.
In May 2000 appellant was no longer living with Latasha's mother but occasionally spent the night when he had early medical appointments nearby the next day. On one such night in May, Latasha came home around 1:00 a.m. or 2:00 a.m. She did not have a house key. Appellant, who was in the living room watching television, let her into the apartment. Latasha changed into an over sized T-shirt and went into the kitchen to prepare a bottle for her infant daughter. Appellant joined Latasha in the kitchen/den area.
According to Latasha, the "same process" "started again." Appellant had her touch his penis until he got an erection. Appellant digitally penetrated Latasha and then told her to lie on the den floor. She complied. Appellant orally copulated Latasha. Appellant then got on top of Latasha. He began to insert his penis into her vagina. After he thought it was going in he held Latasha's wrists at either side of her shoulders. According to Latasha, this was the first time appellant had ever attempted to have intercourse with her. Before appellant was able to achieve full penetration Latasha said "no, no. I don't want to." She got up and went to her room.
Initially Latasha told no one about the incident. However, in the meantime her mother and appellant began battling over custody and visitation rights to their then three-year-old son, R. In June appellant filed a custody action against Latasha's mother to secure those rights. This prompted Latasha to tell her mother how appellant had molested her. Latasha explained she finally shared this information with her mother because she did not want appellant to have the opportunity to do the same thing to R. Latasha's mother was too distracted by the custody proceedings *821 to report this information to the police. She tried to convince Latasha to report the incidents to the police herself, but Latasha refused.
In July 2000, Latasha's mother attended a mediation concerning R.'s custody. She told the mediator appellant had molested Latasha and stated she also believed he was molesting R. After the mediation, Latasha agreed to go with her mother and report the incidents of abuse to the police.
Appellant testified on his own behalf. He denied any of the alleged acts of molestation occurred.
Appellant testified Latasha was five years old when he started dating her mother. He lived with Latasha's mother on and off for years. According to appellant, they broke off and resumed their relationship at least 12 times over the course of several years. Throughout this entire time appellant held some type of temporary job. During gaps in his employment he "booked" racehorses.
Appellant explained the 1994 incident as an attempt to discipline Latasha. He stated he grabbed her hands in an attempt to scare her into cleaning her room. Appellant said Latasha would never comply and would never listen to him. On several occasions Latasha told him he was not her father and for this reason she did not have to obey him. He acknowledged he pled no contest to a charge of what he referred to as child "harassment." Appellant also admitted suffering a prior felony conviction for purchasing/possessing cocaine base for sale.
Appellant testified he rarely saw Latasha while living with her mother because he was always at work and because Latasha was often not home. As Latasha had admitted, she would leave the house for days at a time. She had done this so often Latasha's mother had filed several missing persons reports during Latasha's younger years.
Appellant denied he had ever touched Latasha inappropriately and denied the allegations of molestation and rape. Appellant believed Latasha and her mother had concocted these stories to gain leverage in the custody dispute over R.
Heather P. had known Latasha since the seventh grade. They used to walk home from school together and discuss sex, boys and other topics. Heather also knows appellant well. Appellant dated/lived with her mother when he was not dating/living with Latasha's mother. According to Heather, Latasha never spoke negatively about appellant and never told her appellant had been molesting her. In Heather's opinion, Latasha is not a truthful person.
Bennett Lewis is appellant's friend and had been appellant's co-worker. For a period between 1996 and 1997, they worked a seven-days-a-week construction job at a Macy's site in East Los Angeles from 3 in the afternoon to 4 in the morning. In April 2000 when appellant became ill and was living in Upland, he drove appellant to his dialysis treatments. Lewis knew Latasha's mother through appellant. Lewis called her the day she received the legal notice of appellant's custody action. She was angry. According to Lewis, she was loud and used profanity.
Evantine Hughes met appellant at a dialysis clinic the year before. He often spent evenings at her residence in Altadena to check on her because she was so sick. Appellant sometimes spent the night at her residence when he had dialysis treatments the next day at a clinic located near her home.
Jenette Griffin is appellant's mother. At the time of trial she had known Latasha's mother for 12 or 13 years. They often socialized and even sometimes shared private nursing jobs. She could not recall a single evening in May 2000 when appellant could have spent the night *822 at Latasha's mother's apartment. He had spent every night in May either at her residence or at Ms. Hughes's residence in Altadena.
An information charged appellant with committing (1) a lewd and lascivious act between October 1, 1996, and February 1997, on Latasha, then a minor under the age of 14;[2] (2) oral copulation on Latasha, then a minor under the age of 16, between February 1997 and October 1998;[3] (3) sexual penetration with a foreign object between February 1997 and October 1998 on Latasha, then a minor under the age of 16;[4] (4) forcible rape;[5] (5) oral copulation on Latasha, then a minor under the age of 18, between May 1, 2000, and May 30, 2000;[6] and sexual penetration with a foreign object on Latasha between May 1, 2000, and May 30, 2000, then a minor under the age of 18.[7]
The jury convicted appellant as charged. The trial court denied appellant's motion for new trial and request for probation and sentenced him to a total term of six years. This appeal followed.

DISCUSSION

I. THE RECORD CONTAINS INSUFFICIENT EVIDENCE OF FORCE TO SUSTAIN APPELLANT'S CONVICTION FOR FORCIBLE RAPE.

Appellant does not specifically challenge his five convictions for committing lewd and lascivious acts, sexual penetration with a foreign object or oral copulation. He does, however, contend the forcible rape conviction must be reversed due to insufficient evidence of "force."
When the sufficiency of the evidence is challenged on appeal, we review the "whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence that is, evidence which is reasonable, credible, and of solid valuesuch that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."[8] This necessarily requires each essential element of an offense be supported by substantial evidence.[9] However, a judgment of conviction will not be set aside unless it is clearly shown there is no basis on which the evidence can support the conclusion of the jury.[10]
The offense of rape is defined as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, ... [¶] accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."[11] The prosecutor acknowledged there was no evidence of duress, menace, or fear and accordingly tried the case exclusively on the theory of rape by force.
*823 Unlike the terms "menace" [12] and "duress"[13] the Legislature has not provided a statutory definition of "force" for purposes of establishing forcible rape. However, a legal definition of "force" has since been developed by case law. The definition accepted by virtually every court to consider the issue was first articulated in People v. Cicero, a child molestation case.[14] Relying on law developed in rape cases,[15] the Cicero court concluded a prosecutor who pursues a theory physical force was applied on a child during an offense must "prove that the defendant used physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself."[16]
The Cicero court acknowledged it is not necessary to prove the victim suffered physical harm or injury. "[T]he fundamental wrong at which the law of rape is aimed is not the application of physical force that causes physical harm. Rather, the law of rape primarily guards the integrity of a woman's will and the privacy of her sexuality from an act of intercourse undertaken without her consent. Because the fundamental wrong is the violation of a woman's will and sexuality, the law of rape does not require that `force' cause physical harm. Rather, in this scenario, `force' plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will"[17]
Just what actions or gestures will constitute the "force" sufficient to demonstrate the sexual act was against the will of a victim varies with the circumstances and age of the victim. Nevertheless, in each case in which the court found the requisite force, the defendant had applied some sort of physical pressure to overcome the victim's will in order to commit the act.
For example in People v. Cicero the court found its definition of "force" doubly met because the defendant's acts of picking up the 11 and 12 year old girls and carrying them along was both substantially different from and greater than that necessary to accomplish the lewd act of feeling their crotches.[18]
In People v. Pitmon[19] the victim was an eight-year-old boy. The defendant used the requisite "force" by holding the boy's hand to his penis while manipulating it to masturbate himself, and by slightly shoving the boy's back while having the boy orally copulate him.[20]
In People v. Montero[21] the fact the young victim's vagina showed evidence of swelling, bruising and trauma demonstrated *824 as a matter of law the defendant had used force in raping the victim.[22]
In People v. Bergschneider[23] the 14-year-old, slightly retarded, victim put her hands in front of her vagina to resist his act of intercourse but the defendant pushed her hands away. In another incident the victim unsuccessfully tried to push the defendant's head away while he was orally copulating her. The court found the gestures used by the defendant to overcome the victim's resistance was "force" greater than and different from that necessary to accomplish the lewd acts.[24]
In People v. Babcock[25] the evidence showed the defendant took the seven-year-old and eight-year-old victims' hands and held them to his crotch. When the eight-year-old girl tried to pull away the defendant pulled it back. The court found the defendant's manipulation of the victims' hands evidence of "force" greater than or different from that necessary to accomplish the lewd acts.[26]
In People v. Neel[27] the defendant committed several lewd acts with his nine-year-old daughter. The court found his conduct of forcing her head down on his penis when she tried to pull away and grabbing her wrist, placing her hand on his penis and making her masturbate him constituted evidence showing the defendant used force to accomplish the lewd acts against her wishes.[28]
In People v. Bolander[29] the defendant molested his nine-year-old stepson. The evidence established the boy pulled his pants back up after the defendant pulled them down. In response, the defendant pulled the boy's pants down again, bent the boy over, held the boy's waist, pulled him close and sodomized the boy. These acts in response to the victim's resistance constituted "force" greater than or different from that necessary to accomplish the lewd acts.[30]
In People v. Mom[31] two intruders pulled *825 the victim onto her back before engaging in sexual intercourse with her. All the while, she cried and said, "Stop, don't do this ..."[32] The court found this evidence more than sufficient to establish the men accomplished the rape against the victim's will.[33]
By contrast, the court in People v. Kusumoto[34] found the evidence insufficient to establish the defendant had used force in committing rape with a foreign object. The evidence in the Kusumoto case established on two separate occasions the 13 year old victim awoke to find the defendant's hand in her shorts and his finger in her vagina.[35] The court concluded the concept of "force" could not "be stretched to encompass this type of conduct where the victim's will was not overcome by any physical force substantially different from or greater than that necessary to accomplish the act itself."[36]
The court analyzed the "force" element of this offense and concluded the term has the same meaning in this context as it does in the rape statute. The court reasoned "`the act of sexual intercourse must be accomplished ... without [the victim's] consent .... [¶] Conceptually, "lack of consent" results either from the defendant's use of force or threatened force, or from the female's incapacity to consent .... [¶] If the defendant uses force or threatened force to accomplish the act of sexual intercourse, there is no consent. The force to which reference is made is not the force inherent in the act of penetration but the force used or threatened to overcome or prevent resistance by the female.'"[37]
In light of these various examples the record evidence does not permit a finding appellant used "force" to overcome Latasha's will in order to commit the act of intercourse. That is to say, there was no evidence appellant applied any force substantially greater than or different from that necessary in order to commit the act of intercourse.
At the time of the offense Latasha was 17 years old. She had lived for substantial periods away from parental control. She had become pregnant and given birth. According to Latasha, appellant was small and slightly built. In describing the alleged rape, Latasha testified she came home between 1:00 a.m. and 2:00 a.m. and appellant let her into the house. After she changed into a T-shirt appellant joined her in the kitchen as she prepared a bottle for her infant daughter. They talked for a while. At some point appellant told her to touch his penis until it got hard. She complied. Appellant then digitally penetrated Latasha. Appellant told Latasha to lie on the den floor where he orally copulated her. Appellant then got on top of Latasha and started to put his *826 penis into her vagina. When he thought it was "going in" appellant held Latasha's wrists on the floor next to her shoulders. Before appellant achieved full penetration Latasha "got up" and said "no, no. I don't want to." She spoke in a normal tone of voice because appellant "was right there."
Unlike the situation in Pitmon or Babcock, here there was no evidence appellant held Latasha's hand to get her to touch his penis. Nor did Latasha testify appellant pushed her to the floor to commit the acts of oral copulation or sexual intercourse as in Mom. There was also no evidence appellant had to push Latasha's hands away from her vagina prior to oral copulation or intercourse as occurred in Bergschneider. Instead, the evidence is Latasha acquiesced in each of appellant's requests. When Latasha decided she did not wish to complete the act of sexual intercourse, she got up and walked away.
As they did in the trial court, the People argue appellant's use of force is demonstrated by his act of holding Latasha's wrists as he attempted to penetrate her. However, there was no evidence appellant held her wrists in response to any suggestion of reluctance. Nor did Latasha testify she wanted to get up earlier but could not because he was holding her down, or because he was holding her wrists.
In the context of this case appellant's act of holding her wrists is equivocal at best. Given the absence of evidence of any type of physical gesture designed to overcome Latasha's will, holding her wrists at this particular moment during the sex act is just as consistent with consensual relations.
To compound the problem, the jury in the present case was provided no guidance regarding the meaning of the term "force" in a prosecution for forcible rape. The trial court defined the terms "menace" and "duress" but failed to provide the jury with a definition of "force" despite the fact the prosecution relied solely on a "force" theory for the rape conviction. Because the jury was not informed "force" in this context requires evidence of force substantially different from or greater than that necessary to accomplish sexual penetration, the jury was free to consider even minimal physical contact, and even physical contact virtually inherent in the act itself, as sufficient force for a conviction of forcible rape.
Indeed, the prosecutor in closing argument urged the jury to do precisely that. The prosecutor told the jury the physical contact during the act of sexual intercourse constituted the "force" required for forcible rape. The prosecutor argued: "Now, this time he gets her on the floor. He gets on top of her. He puts his hands around her wrists. He is lying on top of her. She is pinned to the floor. She says she can't move, and he takes his penis and puts it partway inside of her vagina. [¶] Now, it is interesting to note here this is the first time she said in all of this that she actually said, `No, stop.' And he does at that point in time. [¶] ...
"Now, it is irrelevant that the fact he does stop after she says no, because she is already pinned to the ground and he is already on top of her. That constitutes force. That is physical force, [¶] There were a number of ways where this element of rape can becan happen. Violence, duress, menace, fear of injury. None of these were presents [sic]. What is presents [sic] is the force. The mere fact him putting his hands on her wrist and pinning her arms back is enough to constitute force. She testified that was against her will. That meets all the elements of the forcible rape."
Normally appellate courts defer to a jury's findings where there is any substantial *827 evidence to support them.[38] Such deference is unwarranted, however, when the jury is not properly instructed on an essential element of the offense, and the evidence of the essential element is at best equivocal, as in this case.[39]
The court did not provide the jury with a definition of "force" although in this context the term "force" has a "specialized meaning not readily known to the average lay juror...."[40] Thus, given the lack of guidance and the prosecutor's closing argument, it is likely the jury voted for conviction without considering whether the evidence of touching in this case constituted "force" substantially different from or greater than that necessary to commit the act of sexual intercourse itself.[41]
*828 In sum, the evidence may have established appellant had unlawful intercourse with a minor.[42] However, unlike all the decisions noted above, the evidence was inadequate to show appellant used excessive or different force to overcome Latasha's will in order to commit the act of sexual intercourse. Accordingly, the rape conviction must be reversed.

II.-IV.[**]

DISPOSITION
The conviction and sentence imposed on count 16 for forcible rape in violation of section 261, subdivision (a)(2) is reversed. In all other respects the judgment is affirmed.
I concur: LILLIE, P.J.
PERLUSS, J., Concurring and Dissenting.
I respectfully disagree that the jury was not properly instructed on the element of force and that the record contains insufficient evidence of force to affirm Griffin's conviction for rape. In all other respects, I concur in the majority's opinion.

A. The Trial Court Was Not Required To Instruct Sua Sponte On the Definition of "Force."
The trial court has a sua sponte duty to instruct the jury on the general principles of law relevant to and governing a case. (People v. Cummings (1993) 4 Cal.4th 1233, 1311, 18 Cal.Rptr.2d 796, 850 P.2d 1.) The court must define technical terms that have meanings peculiar to the law. But there is no duty to amplify or clarify commonly understood words used in jury instructions. (People v. Estrada (1995) 11 Cal.4th 568, 574, 46 Cal.Rptr.2d 586, 904 P.2d 1197 ["When a word or phrase `"is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request."`[Citations.] A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that differs from its nonlegal meaning. [Citation.]"].)[1] In my view, "force" as used in Penal Code section 261, subdivision (a)(2),[2] to specify one of the means by which rape may be accomplished does not have a definition that differs from its nonlegal meaning; and no sua sponte instruction on the meaning of that term is required.
*829 In prosecutions under section 288, subdivision (b) (lewd act with a child under 14 years by means of force), and other forcible sex offense cases involving minors, the appellate courts are divided regarding the trial court's obligation to instruct sua sponte on the meaning of "force" because it arguably has a "specialized meaning not readily known to the average lay juror i.e., `physical force [that is] substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' [Citation.]" (Compare People v. Pitmon (1985) 170 Cal.App.3d 38, 52, 216 Cal.Rptr. 221, and CALJIC No. 10.42 [defining "force" for prosecutions under section 288, subd. (b)] with People v. Elam (2001) 91 Cal.App.4th 298, 306, 110 Cal. Rptr.2d 185 ["It thus is doubtful whether the court ever has a sua sponte duty to define force in a sexual offense case containing the element that it be accomplished against the will of the victim."].)
As explained in People v. Cicero (1984) 157 Cal.App.3d 465, 204 Cal.Rptr. 582, which the majority observes was the case that first articulated the definition of "force" now widely used in child molestation cases, "Subdivisions (b) and (a) of section 288 on their face draw a distinction between those lewd acts that are committed by force and those that are not .... Subdivision (b) must therefore proscribe conduct significantly different from that proscribed by subdivision (a). [¶] It necessarily follows that if commission of a lewd act itself constitutes the minimum proscribed conduct under subdivision (a), then in cases where `force' is charged under subdivision (b), and the People pursue a theory that physical force was used on a child, and the child is not physically harmed, it is incumbent upon the People to prove that the defendant used physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself. [Citation.]" (Cicero, at pp. 473-474, 204 Cal.Rptr. 582, fn. omitted.) In contrast, the Cicero court explained that, in a rape case, "`force' plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will." (Cicero, at p. 475, 204 Cal. Rptr. 582; accord, People v. Young (1987) 190 Cal.App.3d 248, 257-258, 235 Cal.Rptr. 361 ["[I]n order to establish force within the meaning of section 261, subd[.] (2), the prosecution need only show the defendant used physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the child."].)
Prior to its amendment in 1980, section 261, subdivision (2) defined rape as an "act of sexual intercourse, accomplished with a person not the spouse of the perpetrator" under circumstances where the person resists, but where "resistance is overcome by force or violence." (Stats.1979, ch. 994, § 1, p. 3383.) The 1980 amendment, in defining rape by force or fear, deleted all reference to resistance by the victim; and subdivision (2) defined rape as an act of sexual intercourse accomplished with a person not the spouse of the perpetrator "[w]here it is accomplished against a person's will by means of force or fear of immediate and unlawful bodily injury on the person or another." (Stats.1980, ch. 587, § 1, p. 1595.)[3]
Analyzing the 1980 amendment's "crucial change in the fact-finding process" in *830 rape cases, the Supreme Court in People v. Barnes (1986) 42 Cal.3d 284, 296, 228 Cal. Rptr. 228, 721 P.2d 110, explained that "[b]y removing resistance as a prerequisite to a rape conviction, the Legislature has brought the law of rape into conformity with other crimes such as robbery, kidnapping and assault, which require force [or] fear, and nonconsent to convict." (Id. at p. 302, 228 Cal.Rptr. 228, 721 P.2d 110.) The Supreme Court has further held that "[t]he terms `force' and `fear' as used in the definition of the crime of robbery have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors." (People v. Anderson (1966) 64 Cal.2d 633, 640, 51 Cal.Rptr. 238, 414 P.2d 366.) Accordingly, it is not error for the trial court to fail to instruct the jury, on its own motion, as to the "requisite force" or "fear" necessary to constitute the crime of robbery. (Id. at p. 639, 51 Cal.Rptr. 238, 414 P.2d 366.)[4] In light of the identity of the "force" requirement in the two crimes, it necessarily follows that the trial court cannot be required to instruct sua sponte on the requisite force necessary to constitute the crime of rape.[5] Indeed, no reported case involving the post 1980 version of section 261, subdivision (2) (now subdivision (a)(2)) has held the trial court has such an obligation. (See People v. Montero (1986) 185 Cal. App.3d 415, 432 & fn. 7, 229 Cal.Rptr. 750 [holding that no sua sponte instruction on force required in rape cases where victim physically harmed and declining to reach issue whether definition of force is required in "forcible rape cases without some evidence of physical harm beyond the act itself"].)
In the commonly understood usage of the term, "force" (as contrasted to "violence")[6] has been used if the prohibited act was facilitated by the defendant's application of physical compulsion or constraint against the victim other than, or in addition to, the contact inherent in the prohibited act. "The evidentiary key to whether an act was forcible is not whether the distinction between the `force' used to accomplish the prohibited act and the physical contact inherent in that act can be termed `substantial' Instead, an act is forcible if force facilitated the act rather than being merely incidental to the act." (People v. Bolander (1994) 23 Cal.App.4th 155, 162-163, 28 Cal.Rptr.2d 365 (cone, opn. of Mihara, J.).) The sufficiency of the evidence of "force" in this case must be measured against that commonly understood definition.

B. Substantial Evidence Supports Griffin's Conviction For Rape.
As the majority recognizes, in reviewing Griffin's claim of insufficiency of the evidence, *831 we determine whether, on the whole record, any rational trier of fact could find him guilty beyond a reasonable doubt. (People v. Barnes, supra, 42 Cal.3d at p. 303, 228 Cal.Rptr. 228, 721 P.2d 110.) In evaluating the record, we view the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (People v. Ochoa (1993) 6 Cal.4th 1199, 1206, 26 Cal.Rptr.2d 23, 864 P.2d 103; People v. Jones (1990) 51 Cal.3d 294, 314, 270 Cal.Rptr. 611, 792 P.2d 643.) Although we must ensure the evidence is reasonable, credible and of solid value, it is the exclusive province of the trier of fact to determine the credibility of a witness and the truth or falsity of the facts on which the determination depends. If the verdict is supported by substantial evidence, we accord due deference to the trier of fact and do not substitute our evaluation of a witness's credibility for that of the fact finder. (People v. Barnes, supra, 42 Cal.3d at pp. 303-304, 228 Cal. Rptr. 228, 721 P.2d 110.)
Latasha testified that Griffin, without her consent and against her will, partially penetrated her vagina with his penis after moving his body on top of hers and while holding her arms and wrists so that she was unable to move them:
"Q. Let me ask you, specifically. You are sitting on the floor and what did he do, specifically?
"A. Lay down. He told me to lay down and I laid down and he started putting his mouth on my vagina and then he got on top of me and I was....
"Q.... Was he holding your wrists with his hands?
"A. Yes.
"Q. And were your arms on the floor?
"A. On my back on the floor, yes.
"Q. He was on top of you?
"A. (Nods.)
"Q. Were you able to move your arms?
"A. No, they were like that."
"Q. Was what he did without your consent?
"A. Yes.
"Q. Against your will?
"A. Yes.
"Q. And he held your arms down while he put his penis inside you?
"A. Yes."
It was certainly reasonable for the jury to conclude from this testimony that the act of pinning Latasha's arms to the ground as he penetrated her vagina facilitated Griffin's rape of Latasha. The majority, however, suggests Latasha testified only that Griffin held her wrists after he had achieved partial penetration; thus, this use of force did not facilitate his unconsented act of sexual intercourse because "holding her wrists at this particular moment during the sex act is just as consistent with consensual relations." I disagree. Latasha said Griffin held her wrists "[a]fter he thought it was like going to go in" that is, before penetration was actually achieved. Whatever ambiguity exists as to this aspect of her testimony, howeverand putting aside for the moment our obligation to view the evidence in the light most favorable to the prosecutionthere can be no doubt that Latasha unequivocally stated that Griffin held her arms on the ground "while he put his penis insider [her]," as indicated in the testimony just quoted. Although the level of force used to overcome Latasha's will may not have been either "excessive or different," to use the majority's terminology, it was sufficient to support a conviction under section 261, subdivision (a)(2). (See People v. Cicero, supra, 157 Cal.App.3d at *832 p. 475, 204 Cal.Rptr. 582 ["`force' plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will"].)
Griffin, testifying in his own defense, did not contest the issue of force or argue that he believed Latasha had consented to sexual intercourse and that he was merely being passionate. (Cf. People v. Mayberry (1975) 15 Cal.3d 143,125 Cal.Rptr. 745, 542 P.2d 1337.) His defense was that the incident never occurred and that Latasha had fabricated the entire story to assist her mother in the mother's custody dispute with Griffin. The jury obviously disbelieved the defense version of events and accepted Latasha's testimony as truthful.[7] The evidence, even if it might also lead to a different verdict, is sufficient to support Griffin's conviction for rape. (See People v. Holt (1997) 15 Cal.4th 619, 668-669, 63 Cal.Rptr.2d 782, 937 P.2d 213.)
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III and IV of the Discussion section.
[1] Penal Code section 647.6. All further statutory references are to the Penal Code unless otherwise noted.
[2] Section 288, subdivision (a).
[3] Section 288a, subdivision (b)(2).
[4] Section 289, subdivision (i).
[5] Section 261, subdivision (a)(2).
[6] Section 288a, subdivision (b)(1).
[7] Section 289, subdivision (h).
[8] People v. Johnson (1980) 26 Cal.3d 557, 578, 162 Cal.Rptr. 431, 606 P.2d 738.
[9] People v. Johnson, supra, 26 Cal.3d 557, 577, 162 Cal.Rptr. 431, 606 P.2d 738; People v. Barnes (1986) 42 Cal.3d 284, 303, 228 Cal.Rptr. 228, 721 P.2d 110.
[10] People v. Montero (1986) 185 Cal.App.3d 415, 424, 229 Cal.Rptr. 750, citing People v. Redmond (1969) 71 Cal.2d 745, 755, 79 Cal. Rptr. 529, 457 P.2d 321.
[11] Section 261, subdivision (a)(2).
[12] Section 261, subdivision (c).
[13] Section 261, subdivision (b).
[14] People v. Cicero (1984) 157 Cal.App.3d 465, 204 Cal.Rptr. 582.
[15] In quoting and analyzing Perkins & Boyce's discussion of the common law of rape (Perkins & Boyce, Criminal Law (3d ed.1982) pp. 210-212), the Cicero court recognized "[m]any other jurisdictions have also defined the concept of `force' in the context of the law of rape." (People v. Cicero, supra, 157 Cal. App.3d 465, 475, fn. 9, 204 Cal.Rptr. 582.)
[16] People v. Cicero, supra, 157 Cal.App.3d 465, 474, 204 Cal.Rptr. 582.
[17] People v. Cicero, supra, 157 Cal.App.3d 465, 475, 204 Cal.Rptr. 582, italics added.
[18] People v. Cicero, supra, 157 Cal.App.3d 465, 474, 204 Cal.Rptr. 582.
[19] People v. Pitmon (1985) 170 Cal.App.3d 38, 216 Cal.Rptr. 221.
[20] People v. Pitmon, supra, 170 Cal.App.3d 38, 48, 216 Cal.Rptr. 221.
[21] People v. Montero, supra, 185 Cal.App.3d 415, 229 Cal.Rptr. 750.
[22] People v. Montero, supra, 185 Cal.App.3d 415, 432, 229 Cal.Rptr. 750. Because the victim suffered physical injury, the court noted, "[n]o clarifying or amplifying instruction on force is needed where, as here, the evidence establishes force by physical harm." (People v. Montero, supra, 185 Cal.App.3d 415, 432, 229 Cal.Rptr. 750.)
[23] People v. Bergschneider (1989) 211 Cal. App.3d 144, 259 Cal.Rptr. 219.
[24] People v. Bergschneider, supra, 211 Cal. App.3d 144, 153, 259 Cal.Rptr. 219.
[25] People v. Babcock (1993) 14 Cal.App.4th 383, 17 Cal.Rptr.2d 688.
[26] People v. Babcock, supra, 14 Cal.App.4th 383, 386-387, 17 Cal.Rptr.2d 688.
[27] People v. Neel (1993) 19 Cal.App.4th 1784, 24 Cal.Rptr.2d 293.
[28] People v. Neel, supra, 19 Cal.App.4th 1784, 1785-1786, 24 Cal.Rptr.2d 293.
[29] People v. Bolander (1994) 23 Cal.App.4th 155, 28 Cal.Rptr.2d 365.
[30] People v. Bolander, supra, 23 Cal.App.4th 155, 159, 28 Cal.Rptr.2d 365. In so holding the Bolander court expressly disavowed dictum in its earlier decisions suggesting the evidence of force was insufficient because "lewd acts with a child under age 14 `almost always involve some physical contact other than [the lewd act itself]' ([People v.]) Senior [(1992)] 3 Cal.App.4th [765] at p. 774 [5 Cal.Rptr.2d 14] [grabbing the nine-year-old's arm while fondling her].) and "... a modicum of holding and even restraining cannot be regarded as substantially different or excessive "force" [beyond the force required for the lewd act.]' ([People v.] Schulz [(1992)] 2 Cal.App.4th [999] at p. 1004 [3 Cal.Rptr.2d 799] [pulling the victim's head back when she tried to pull away from oral copulation].)" (People v. Bolander, supra, 23 Cal.App.4th 155, 159, 28 Cal.Rptr.2d 365.)
[31] People v. Mom (2000) 80 Cal.App.4th 1217, 96 Cal.Rptr.2d 172.
[32] People v. Mom, supra, 80 Cal.App.4th 1217, 1220, 96 Cal.Rptr.2d 172.
[33] People v. Mom, supra, 80 Cal.App.4th 1217, 1225, 96 Cal.Rptr.2d 172.
[34] People v. Kusumoto (1985) 169 Cal.App.3d 487, 215 Cal.Rptr. 347.
[35] People v. Kusumoto, supra, 169 Cal.App.3d 487, 490, 215 Cal.Rptr. 347.
[36] People v. Kusumoto, supra, 169 Cal.App.3d 487, 494, 215 Cal.Rptr. 347; see also, People v. Young (1987) 190 Cal.App.3d 248, 257-258, 235 Cal.Rptr. 361 [to establish "force" within the meaning of the rape statute the prosecution need only show the defendant used "physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will" of the victim].
[37] People v. Kusumoto, supra, 169 Cal.App.3d 487, 493, 215 Cal.Rptr. 347, quoting 3 Wharton, Criminal Law (14th ed. 1980) sections 287-288, pages 30-34, footnotes omitted.
[38] People v. Barnes, supra, 42 Cal.3d 284, 303-304, 228 Cal.Rptr. 228, 721 P.2d 110.
[39] In re Winship (1970) 397 U.S. 358, 362, 90 S.Ct. 1068, 25 L.Ed.2d 368 [the federal guarantees of due process and jury trial require the jury be instructed to find all facts necessary to establish guilt beyond a reasonable doubt]; Estelle v. McGuire (1991) 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 [misleading or ambiguous instructions violate due process where there is a reasonable likelihood the jurors misunderstood the applicable law].
[40] People v. Pitmon, supra, 170 Cal.App.3d 38, 52, 216 Cal.Rptr. 221; People v. Cicero, supra, 157 Cal.App.3d 465, 474, 204 Cal.Rptr. 582; compare dicta in People v. Elam (2001) 91 Cal.App.4th 298, 306, 110 Cal.Rptr.2d 185 [comparing dictionary definition of "force" with legal definition in case where the defendant was not charged with forcible oral copulation, but with assault with intent to commit forcible oral copulation].
[41] The dissent takes the position the term "force" in a rape prosecution has no technical legal meaning and thus a sua sponte instruction on the definition of "force" is not required. The dissent argues no reported decision involving a rape prosecution under section 261, subdivision (a)(2) has imposed an obligation to define the term "force" since the 1980 amendment to the rape statute eliminating the requirement of proving resistance by the victim. This observation begs the question whether the need for an instruction on the term was even raised as an issue by the parties or the facts of the case. Indeed, in adult rape cases the question whether the defendant used the requisite force, menace, duress or fear is generally not as close a question as it is in cases involving minors, and usually not as close a question as it is in the present case. (See, e.g. People v. Barnes, supra, 42 Cal.3d 284, 288-291, 228 Cal.Rptr. 228, 721 P.2d 110 [overwhelming evidence rape committed by fear of physical violence based on the defendant's psychotic behavior, threats and physical act of rearing back as if preparing to hit her]; People v. Williams (1992) 4 Cal.4th 354, 358, 14 Cal.Rptr.2d 441, 841 P.2d 961 [prior to raping her the defendant punched the victim in the eye]; People v. Knox (1988) 204 Cal.App.3d 197, 204, 251 Cal.Rptr. 121 [record replete with evidence of force from the defendant's acts of brandishing a gun, firing the gun, and/or hitting, blind-folding, handcuffing or binding his victims].

The dissent suggests every lay juror would know force "has been used if the prohibited act was facilitated by the defendant's application of physical compulsion or constraint against the victim other than, or in addition to, the contact inherent in the prohibited act.'' On its face we do not find this definition of "force" objectionable as a possible alternative instruction on the meaning of the term in prosecutions for forcible sex crimes. However, we cannot agree the jurors must have had this "common understanding" of the term where the evidence does not permit the inference holding her wrists "facilitated" the penetration, and thus the rape. Instead, when Latasha gave her account of the events in her own words she testified, "[a]fter he thought it was like going to go in," then he held her wrists where she had them on the floor.
Indeed, the dissent makes no attempt to apply its definition to show how holding her wrists facilitated the alleged rape in this case. Instead, the dissent relies on the portion of the testimony where Latasha testified (1) she could not move while appellant was on top of her and holding her wrists and (2) the sex act was against her will. To accept the dissent's analysis would permit rape convictions, despite the absence of physical "force," in any case in which the victim is willing to testify the act of intercourse was against her will. An after-the-fact statement of no consent is an inappropriate substitute for evidence of some physical act demonstrating intercourse was against the will of the victim. It would also be unprecedented and contrary to the express statutory requirements for a conviction of forcible rape.
[42] The dissent points out appellant did not contend he believed Lastasha had consented to sexual intercourse. This is not surprising. Had he done so, appellant would have admitted, for example, to the offense of unlawful intercourse with a minor more than three years his junior. (Pen.Code, § 261.5, subd. (c).) We thus can place no special significance on counsel's tactical decision to rely instead on Latasha's lack of credibility rather than her consent to the act.
[**] See footnote *, ante.
[1] A party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the parry has requested appropriate clarifying or amplifying language. (People v. Lewis (2001) 26 Cal.4th 334, 380, 110 Cal. Rptr.2d 272, 28 P.3d 34; People v. Lang (1989) 49 Cal.3d 991, 1024, 264 Cal.Rptr. 386, 782 P.2d 627.)
[2] All further statutory references are to the Penal Code.
[3] Section 261, subdivision (a)(2) [formerly subdivision (2)], currently provides, "(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: [¶] ... [¶] (2) Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."
[4] The force required for a robbery conviction is "something more than the amount of force necessary to accomplish the mere taking of the property itself." (People v. Mungia (1991) 234 Cal.App.3d 1703, 1708, 286 Cal.Rptr. 394.)
[5] CALJIC No. 10.42, the standard instruction for violations of section 288, subdivision (b)(1), lewd act with a child under 14 years by force or fear, contains the definition of "force" developed in the case law and discussed in the majority opinion. CALJIC No. 10.00, the standard instruction for rape, in contrast, like section 261 itself, defines neither "force" nor "violence." In general, "`[a] defendant is not entitled to remain mute at trial and scream foul on appeal for the court's failure to expand, modify, and refine standardized jury instructions.'" (People v. Valentine (2001) 93 Cal.App.4th 1241, 1246-1247, 113 Cal.Rptr.2d 748 [failure to define the term "menace"].)
[6] In 1986 the Legislature reintroduced "violence" as one of the means by which a rape could be committed, in addition to "force" or "fear of immediate and unlawful bodily injury." (Stats. 1986, ch. 1299, § 1, p. 4592.)
[7] The majority observes that Griffin's counsel made a "tactical decision to rely ... on Latasha's lack of credibility rather than her consent to the act." I agree. But the jury plainly rejected Griffin's defense, and we should not substitute our evaluation of Latasha's credibility for that of the fact finder. (People v. Barnes, supra, 42 Cal.3d at pp. 303-304, 228 Cal.Rptr. 228, 721 P.2d 110.)