Filed 11/27/18

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H043837 |
| Plaintiff and Respondent, | (Monterey County<br>Super. Ct. Nos. SS150481, SS151758) |
| v. | |
| ERNESTO VEGA MORALES, | |
| Defendant and Appellant. | |

Defendant Ernesto Vega Morales was convicted by jury trial of four counts of committing a lewd act on a child under 14 (Pen. Code, § 288, subd. (a)),[1] one count of committing a forcible lewd act on a child under 14 (§ 288, subd. (b)), one count of sexual penetration of a child age 10 or younger (§ 288.7, subd. (b)), two counts of criminal threats (§ 422), and two counts of dissuading a witness by threat of force (§ 136.1, subd. (c)(1)). The jury found true an allegation that defendant had committed sexual offenses against multiple victims (§ 667.61, subd. (e)(4)). The court committed defendant to state prison for a term of 75 years to life consecutive to a six-year determinate term.

On appeal, defendant contends that (1) the trial court violated his Sixth Amendment rights when it refused to allow him to substitute retained counsel for his appointed trial counsel on the eve of trial, (2) two of the lewd act counts, the forcible

---

[*]     This opinion is certified for publication with the exception of sections II(A), II(B)(2), II(B)(3), II(C), and II(D)(1).

[1]     Subsequent statutory references are to the Penal Code unless otherwise specified.

lewd act count, the criminal threats counts, and the dissuading counts are not supported by substantial evidence, (3) the prosecutor committed misconduct by commenting in rebuttal argument on defendant's courtroom conduct, (4) the court made sentencing errors, and (5) his sentence is unconstitutionally cruel and unusual.

The Attorney General concedes that the one lewd act count involving Jane Doe 1 must be stricken because it was a lesser included offense of the forcible lewd act count involving Jane Doe 1. We agree and will direct the trial court to strike that count. Although we reject defendant's other contentions, we reverse and remand for resentencing because we conclude that the trial court imposed unauthorized 15 years to life terms for three counts rather than the 25 years to life terms that were statutorily mandated for those counts. Consequently, we do not address defendant's cruel and unusual punishment contention, which he may raise in the trial court at the resentencing hearing.

## I. Evidence Presented at Trial

In the summer of 2004, Jane Doe 3 was seven years old and living in Salinas with her mother. Jane Doe 3's grandfather lived in a trailer park in Alisal. The grandfather's trailer was next door to the trailer where defendant lived with his wife and children. Jane Doe 3 "really enjoy[ed]" visiting her grandfather. She sometimes played with defendant's "little boys."

Around July 4, 2004, Jane Doe 3 was in defendant's trailer with his boys watching "Family Guy" on television. Defendant "just kind of moved me like onto his lap a little bit, and he unzipped my pants and was just touching me like over my underwear." Defendant "put his finger inside the zipper over the underwear and was rubbing" her "vagina." He asked Jane Doe 3 "if I liked it and if it had felt good." Jane Doe 3 "knew it wasn't normal." She told defendant "that I had to be home for dinner that my grandpa wanted me to come back," and she "[g]ot up and left." After that she "didn't want to go

2

back" to her grandfather's because she did not want to see defendant. A few days later, Jane Doe 3 told her older sister what had happened, but she asked her sister not to tell anybody.

Jane Doe 3's mother noticed that "all the [*sic*] sudden Jane Doe Three did not want to go see grandpa." On September 11, 2004, Jane Doe 3's older sister told Jane Doe 3's mother that defendant "had been touching" Jane Doe 3. Jane Doe 3's mother contacted the police, and she, Jane Doe 3, and Jane Doe 3's older sister were interviewed by the police. Jane Doe 3's mother told the police that "I could not press charges" because the grandfather was "terminally ill" and her husband was "already so angry that this happened." Jane Doe 3's mother took care thereafter when the family visited the grandfather to keep their presence unknown to defendant, but Jane Doe 3 remained fearful that she would encounter defendant. The grandfather died in January 2005, and Jane Doe 3 and her family never returned to the trailer park after that.

In the fall of 2013, Jane Doe 2 was eight or nine years old and her best friend Jane Doe 1 was seven or eight years old. Jane Doe 2 and Jane Doe 1 lived with their families in an apartment complex in Salinas. Near the back of the apartment complex was a big fruit tree with a swing in it.[2] Defendant lived in a little house next to the big tree. Children who lived in the apartment complex played in the green area next to the big tree. Defendant frequently played with the children, including his nephews, in the tree area.[3]

---

[2]    Jane Doe 2's mother testified that the swing was a tire. Jane Doe 2 testified that the swing was not a tire but a flat rectangle made of wood. However, she also said that she did not remember what kind of swing it was. Jane Doe 1's mother testified that there was both a tire swing and a wood swing in the big tree. Jane Doe 1 described the swing as "made out of wood." She testified that there was only one swing.

[3]    Defendant was "always" drinking beer while he played with the children, and he was "very often" "[d]runk."

3

One day in 2013, Jane Doe 1 was pushing Jane Doe 2 on the swing in the big tree. Jane Doe 1 decided to climb the tree, and she "went in back of the tree" to do so.[4] Jane Doe 2 remained on the swing, where she could not see Jane Doe 1. As Jane Doe 1 was starting to climb the tree, defendant came up behind her, picked her up with his hands on her back and "bottom," held her body against his, threw her over his shoulder as she "was trying to get out of him," and carried her behind the tree. She could not move her arms while he was carrying her. Defendant held her up against the side of the tree and then lifted her up onto the trunk of the tree. While defendant was holding Jane Doe 1 so that she could not move, he put his hand under her pants, under her underwear and began "like rubbing it" in a circular motion. She felt his finger go inside her private parts.

Jane Doe 1 told defendant "I will tell my parents," and he removed his hand and replied that he would "try to hurt my family." Jane Doe 1 was "scared," and she pushed defendant away. She "threw [her]self to the ground," and she and Jane Doe 2 ran away. Jane Doe 1 did not tell anyone because she was "scared" that defendant "might hurt my parents."

On two different days in 2013, "a few days" apart, defendant touched Jane Doe 2 while she was on the swing in the big tree. Defendant did this after he had told the other children who were playing in the area to go dig holes in a different part of the yard. The boys left, but Jane Doe 1, who was also there, "stayed" with Jane Doe 2.[5] After the boys left, defendant touched Jane Doe 2's waist area on her ribs with both hands. On another occasion in 2013, Jane Doe 2 was standing next to the tree, and defendant touched her on

---

[4]     She had climbed the tree before, and it was a good tree for climbing "[b]ecause it kind of like has some steps." The "steps" were "natural bumps" on the tree.

[5]     Jane Doe 1 testified that she saw defendant push Jane Doe 2 on the swing a few times.

the middle side of her thigh.  He "tr[ied] to touch" her "private parts," but he "stopped" when she "was going to start crying."

Jane Doe 2 did not tell her mother that defendant had touched her "[b]ecause he said he was going to kill all my family."  Defendant's threat made Jane Doe 2 "[a]fraid" and "fear[ful]."  Defendant never picked Jane Doe 2 up or put her in the tree.  Jane Doe 2 told Jane Doe 1 about defendant's threat, and Jane Doe 1 told Jane Doe 2 that if Jane Doe 2 told her parents defendant would hurt them.  Jane Doe 2 and her family moved away from Salinas in December 2013 when Jane Doe 2 was nine years old.  Jane Doe 2 and Jane Doe 1 never saw each other again.

In March 2015, Jane Doe 1's mother took Jane Doe 1 to a doctor's appointment.  Before they saw the doctor, Jane Doe 1 asked her mother if the doctor was "going to check up on her private parts."  Her mother said yes, and Jane Doe 1 "started crying."  Jane Doe 1 then disclosed to her mother that defendant had touched her private parts.  Her mother contacted the police.  Jane Doe 1 told the police that defendant had also touched Jane Doe 2.  She also told the police that she had not told anyone earlier that she had been molested because defendant "was going to harm her family."

Defendant was interviewed by the police.  He initially denied having any contact with Jane Doe 1.  As the interview progressed, he admitted he "would play with her [Jane Doe 1], that I carried her like this, that I pushed her on the swing."  "I did pick [Jane Doe 1] up and I took her to the tree."  He eventually admitted that there was "just one time" when "my hand slipped" "over there" on her upper inner thigh, and the child "told me to remove my hand from her and put her down."  "[B]ut I didn't do it on purpose, nor with bad intentions."  Defendant was arrested.

5

## II. Discussion

### A. Denial of Substitution of Counsel Motion

### 1. Background

The public defender was appointed to represent defendant on the initial complaint in March 2015. After a second complaint was filed alleging additional counts, the public defender was appointed in July 2015 to represent him in that case also. On November 10, the two cases were set for jury trial on February 22, 2016.

On January 14, 2016, the court issued orders compelling the attendance at trial of out-of-state witnesses Jane Doe 3, Jane Doe 2, and Jane Doe 2's mother beginning on February 22, 2016 and continuing through February 26.[6] The trial was expected to last for two weeks. In late January 2016, the prosecution moved to consolidate the two cases.

On February 18, 2016, the Thursday before the scheduled Monday trial, attorney Miguel Hernandez filed a motion to substitute in as counsel for defendant.[7] Hernandez appeared in court that afternoon at 4:30 p.m. The court explained that it "had heard either some inkling this morning or maybe even a day ago or so that Mr. Hernandez had been contacted" by defendant's family, but it was only "[a]bout 40 minutes ago in chambers" that Hernandez had informed the court that he had been "retained . . . ." The court noted that two "child witnesses" were scheduled to testify at the trial, and one of them was already scheduled to fly to California from out of state on February 21.

The court asked Hernandez whether he "would be ready and prepared to do a trial in this matter on Monday." He replied: "I would not be ready to try this case on Monday

---

[6]    Jane Doe 3 and her mother had moved away from Salinas in 2006 and had not returned until they were subpoenaed for trial.

[7]    According to Hernandez's post-trial declaration, he was first contacted by defendant's family on January 28, 2016, and he told them that he would represent defendant only if a continuance could be obtained to allow him to "review all discovery" and prepare for trial.

because I would be committing professional suicide." Hernandez confirmed that his substitution motion was "contingent" on a continuance to "a proper date." The court characterized his request as seeking a continuance for "several weeks if not months," and Hernandez did not challenge this characterization. He conceded that a continuance would "inconvenience" the prosecution, but he claimed that defendant's "constitutional right to an attorney of his choice" outweighed that inconvenience.

The court explained that two child witnesses had been "subpoenaed and are prepared to come to court to testify" and that one of the child witnesses "is coming from out of state." The prosecutor explained that she had met with the other child witness that afternoon to prepare her for her appearance in court. The third witness was now an adult and would be coming from out of state on February 21.[8] The court expressed its concern "about the impact that this late attempt to switch attorneys will have on these youthful victims," including one who was "coming from out of the area" and "is anxious about being here and testifying" and another who was coming from "out of the area as well." The court's concern was about "the anxiety and additional damage that it could do to these young victims who . . . are all ready to go" if the trial was postponed. The court took into account that "witnesses, when they're subpoenaed multiple times, get fatigued. And ultimately, they have hesitation about coming in." "I'm weighing the impact on these children" "against the defendant's constitutional rights." The court noted that the trial date "has been set for months," and the substitution motion was being made "within days of the trial." The court denied the motion. It granted the consolidation motion, and an amended information was filed charging defendant with 10 counts involving the three Jane Does and a multiple-victims enhancement allegation.

Trial commenced on February 22, 2016. That day, defendant's appointed trial counsel told the court: "Mr. Morales is again requesting that the trial be continued. It's

---

[8] Jane Doe 3 was 19 years old and lived "across the country."

7

my understanding his family has now hired Mr. Collin Cooper who is out of San Jose. I have a phone number for him. But my client advises me he can be here tomorrow and ready for trial tomorrow. I have not called the attorney and confirmed that." Defendant's trial counsel had not provided any information about the case to Cooper nor had the prosecution. The court denied the request for a continuance due to the fact that "the victims are here," and it noted that "I don't see an attorney here on a timely basis to take this matter over."

Jury voir dire commenced. A jury was sworn on February 24, 2016. Opening statements were made on February 25, and the evidentiary portion of the trial commenced. The three Jane Does and their mothers all testified that week. On February 29, both sides rested, the jury was instructed, and arguments were presented.

In April 2016, after defendant had been convicted, attorney Vikas Bajaj substituted in as defendant's trial counsel. In July, defendant moved for a new trial on the ground that the court had erred in refusing to allow Hernandez to substitute in as defendant's trial counsel. The court denied the new-trial motion.

### 2. Analysis

Defendant claims that the trial court's denial of Hernandez's substitution motion deprived him of his Sixth Amendment right to retained counsel of his choice. He contends that the prosecution failed to *prove* that a continuance would be a hardship for the witnesses, and he argues that "witness anxiety" is not a proper consideration in deciding whether to grant a continuance.

"Any limitations on the right to counsel of one's choosing are carefully circumscribed. Thus, the right 'can constitutionally be forced to yield *only* when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.' [Citations.] The right to such counsel 'must be carefully weighed against other values of substantial importance, such as that seeking to ensure orderly and expeditious judicial

8

administration, with a view toward an accommodation reasonable under the facts of the particular case.' [Citation.] [¶] Limitations on the right to continuances in this context are similarly circumscribed. Generally, the granting of a continuance is within the discretion of the trial court. [Citations.] A continuance may be denied if the accused is 'unjustifiably dilatory' in obtaining counsel, or 'if he arbitrarily chooses to substitute counsel at the time of trial.'" (*People v. Courts* (1985) 37 Cal.3d 784, 790-791 (*Courts*).)

"[T]he 'fair opportunity' to secure counsel of choice provided by the Sixth Amendment 'is necessarily [limited by] the countervailing state interest against which the sixth amendment right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of "assembling the witnesses, lawyers, and jurors at the same place at the same time."' The trial court, however, must exercise its discretion reasonably: 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.'" (*People v. Ortiz* (1990) 51 Cal.3d 975, 983-984.) "'[T]he court should 'balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution.'" (*People v. Keshishian* (2008) 162 Cal.App.4th 425, 429.)

We review the trial court's order denying the continuance motion for abuse of discretion. Since defendant's Sixth Amendment rights were at issue, the court was obligated to balance any impact on his rights against the practical impact on the orderly conduct of the proceedings, including the impact on witnesses. This balancing had to take into account that continuances in *section 288* prosecutions are statutorily restricted. Criminal actions in which a minor "is the victim of the alleged offense, . . . shall be given precedence over all other criminal actions in the order of trial. In those actions, continuations [*sic*] shall be granted by the court only after a hearing and determination of the necessity thereof, and in any event, the trial shall be commenced within 30 days after arraignment, unless for good cause the court shall direct the action to be continued, after

9

a hearing and determination of the necessity of the continuance, and states the findings for a determination of good cause on the record." (§ 1048, subd. (b).) "In any arrest or prosecution under this section [(section 288)] . . . the court shall consider the needs of the child victim . . . and shall do whatever is necessary, within existing budgetary resources, and constitutionally permissible to prevent psychological harm to the child victim . . . resulting from participation in the court process." (§ 288, subd. (d).)

Under these statutes, the trial court was not just permitted but required to "consider the needs of the child victim . . . and . . . do whatever is necessary . . . to prevent psychological harm to the child victim . . . ." (§§ 288, subd. (d); 1048, subd. (b).) Consequently, we find no merit in defendant's claim that the court could not properly consider "witness anxiety" as a factor in evaluating the continuance request. The court was obligated to consider "psychological harm" to the child witnesses from "court processes." None of the cases upon which defendant relies involved a section 288 prosecution in which children would be testifying at the trial.

The trial court did not abuse its discretion in concluding that defendant's desire to replace his trial counsel on the eve of trial did not outweigh the need to avoid disrupting the orderly and expeditious conduct of these proceedings and causing harm to the child witnesses. Three essential witnesses in other states had already been ordered to be present on Monday, February 22, 2016 for the proceedings at the time of the Thursday, February 18 continuance motion. Two of these out-of-state witnesses were alleged victims of section 288 offenses, and one was still a young child. They were due to travel to California just a couple of days after the continuance motion. The local child witness had already been brought to the courtroom to familiarize her with the surroundings. The trial date had been scheduled for months, and defendant had made no prior attempt to replace his trial counsel.

Testimony by victims of section 288 offenses is difficult under any circumstances, but rescheduling such testimony necessarily bears a significant risk of psychological

10

harm because it requires the victims to be repeatedly reminded of their trauma. The statutes restricting continuances in such cases recognize the need to avoid such a risk. We can see no abuse of discretion in the trial court's careful balancing of the impact on defendant's Sixth Amendment rights against the risk that the victims would be harmed and the prosecution derailed.

Defendant's reliance on *Courts* is misplaced. In *Courts*, the defendant was charged with murder, and the trial had been set for October 26. At an October 18 "trial setting conference," the defendant's appointed counsel informed the court that defendant wanted a continuance so that he could "hire private counsel." (*Courts*, *supra*, 37 Cal.3d at p. 787.) The court denied the request. The defendant thereafter retained private counsel, who was willing to represent him if a continuance could be obtained. His private counsel attempted to set a substitution motion for hearing, but the court would not allow him to set it because he was not counsel of record. On the day set for the trial, the retained counsel appeared and requested a continuance. The court denied the request. (*Courts*, at p. 788.) The California Supreme Court found that the denial of the request was an abuse of discretion. It found that the defendant had been diligent in obtaining retained counsel and that there was no justification for the denial of his continuance request. (*Courts*, at pp. 791-794.) In *Courts*, the prosecutor did not claim that there would be any "inconvenience to witnesses" if the trial was continued, and all but one of the witnesses were local residents. (*Courts*, at pp. 794-795.) Unlike the case before us, *Courts* did not involve a section 288 prosecution, a child witness, or any out-of-state witnesses who had already been compelled to be present and made arrangements to travel to California.

The case before us is similar to *People v. Jeffers* (1987) 188 Cal.App.3d 840 (*Jeffers*). *Jeffers* was a prosecution for pimping and pandering in which the victims were two 15-year-old girls. (*Jeffers*, at p. 845.) The defendant was represented by appointed counsel. On the day of trial, he sought to substitute in retained counsel, who was willing

11

to represent defendant only if a continuance was granted. The prosecutor expressed concern that one of the witnesses "had to travel from the east coast to testify." (*Jeffers*, at p. 851.) The court denied the request as untimely. (*Jeffers*, at p. 848.) The Court of Appeal affirmed. It observed that "[w]here a continuance is requested on the day of trial, the lateness of the request may be a significant factor justifying denial absent compelling circumstances to the contrary." (*Jeffers*, at p. 850.) The Court of Appeal also reasoned that the prosecutor's concern about the out-of-state witness supported a finding that a continuance would "adversely affect the orderly administration of justice." (*Jeffers*, at p. 851.) Here, as in *Jeffers*, the tardiness of the continuance motion coupled with the impact on the out-of-state and child witnesses established that a continuance would adversely affect the orderly administration of justice. The trial court did not abuse its discretion.

## B. Substantial Evidence

Defendant contends that two of the lewd act counts, the forcible lewd act count, the criminal threats counts, and the dissuading counts are not supported by substantial evidence.

Our standard of review is well established. "[The] appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People* v. *Reilly* (1970) 3 Cal.3d 421, 425; accord *People* v. *Pensinger* (1991) 52 Cal.3d 1210, 1237.) A trier of fact may rely on inferences to support a conviction only if those inferences are "of such substantiality that a reasonable trier of fact could determine beyond a reasonable doubt" that the inferred facts are true. (*People* v. *Raley* (1992) 2 Cal.4th 870, 890-891.) "Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.)

12

### 1. Lewd Act Counts

### a. Jane Doe 2

Defendant claims that there was insufficient evidence to support a finding of lewd intent as to the two lewd acts on Jane Doe 2 because Jane Doe 2's testimony about the touchings was "extremely vague," she did not describe how he "'tried' to touch her private part," and "pushing a child on a swing" is "commonplace" and "innocent" activity.[9]

Jane Doe 2's testimony was not vague. She was quite specific in describing the nature of the touchings. Twice defendant touched Jane Doe 2's waist area on her ribs with both hands while pushing her on the swing. Another time, defendant touched the middle side of her thigh and "tr[ied] to touch" her "private parts" as she stood by the tree. He "stopped" trying to touch her private parts only when she "was going to start crying." She also testified that defendant told her that if she disclosed his conduct "he was going to kill all my family."

Defendant inaccurately claims that Jane Doe 2 did not explain what she meant when she testified that defendant had *tried* to touch her private parts.[10] She testified that she saw "[h]is hands almost trying to touch my private parts," and his hands were "[a]lmost practically close to my private parts." Since the approach of his hands to her private parts followed his touching of the middle of her thigh, her testimony left no uncertainty or vagueness as to the precise nature of defendant's conduct.

---

[9] Defendant's defense at trial was that he had touched the Jane Does with an "innocent" intent. Defendant's trial counsel argued to the jury: "I think it's pretty clear [defendant] touched them. The question is did he touch them in a lewd and lascivious manner or did he touch them in an innocent manner."

[10] She also explained that she thought defendant intended to touch her private parts because Jane Doe 1 had told her that defendant had touched Jane Doe 1's private parts.

Finally, there was plenty of evidence that defendant's conduct was motivated by a lewd intent. "Conviction under [section 288] has never depended upon contact with the bare skin or 'private parts' of the defendant or the victim. [Citations.] Stated differently, a lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body." (*People v. Martinez* (1995) 11 Cal.4th 434, 444 (*Martinez*).) "[T]he lewd character of an activity cannot logically be determined separate and apart from the perpetrator's intent. It is common knowledge that children are routinely cuddled, disrobed, stroked, examined, and groomed as part of a normal and healthy upbringing. On the other hand, any of these intimate acts may also be undertaken for the purpose of sexual arousal. Thus, depending upon the actor's motivation, innocent or sexual, such behavior may fall within or without the protective purposes of section 288. . . . [T]he only way to determine whether a particular touching is permitted or prohibited is by reference to the actor's intent as inferred from all the circumstances." (*Martinez*, at p. 450.) The relevant circumstances include "the defendant's extrajudicial statements [citation], other acts of lewd conduct admitted or charged in the case [citations], the relationship of the parties [citation], and any coercion, bribery, or deceit used to obtain the victim's cooperation or avoid detection [citation]." (*Martinez*, at p. 445.)

Here, "all of the circumstances" showed that defendant's touchings of Jane Doe 2 were done with a lewd intent. While defendant's conduct in touching Jane Doe 2 as he pushed her on the swing did not by itself disclose a lewd intent, the fact that on another occasion he touched her thigh and reached out toward her private parts, stopping only when she started crying, was indicative of his sexual intent on all three occasions. Defendant's coercive threat confirmed his own understanding of the illicit nature of his touchings of Jane Doe 2. Furthermore, defendant's touchings of the other Jane Does, which occurred under extremely similar circumstances to his touchings of Jane Doe 2,

14

and were unmistakably sexually motivated, supported a reasonable inference that his touchings of Jane Doe 2 were similarly motivated.

Defendant relies heavily on *People v. Mansell* (1964) 227 Cal.App.2d 842 (*Mansell*).  In *Mansell*, the prosecution appealed after an information alleging two section 288 counts against two little girls was set aside by the superior court.  One of the little girls had testified that Mansell, a neighbor, held her on his lap, " 'put his hand under my shorts and in between my legs,' " and " 'moved his fingers.' " (*Mansell*, at p. 843.)  The other little girl testified that Mansell held her on his lap and touched her " '[b]etween my legs.' " (*Id.* at pp. 844-845.)  A third girl witnessed this conduct and confirmed that Mansell's " 'hands was [*sic*] in between their legs.' " (*Id.* at p. 845.)  She also testified that Mansell " 'stopped and moved his hands from the leg' " when he saw her watching. (*Id.* at p. 846.)  Despite this evidence, the Court of Appeal found that defendant's conduct was such "commonplace behavior" that it did not suggest a lewd intent, and the court affirmed the dismissal of the case.  (*Mansell*, at p. 848.)

We cannot accept the reasoning in *Mansell*.  (See *People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1380 [distinguishing *Mansell*].)  The evidence in *Mansell* clearly supported an inference of lewd intent.  An adult neighbor touched two little girls "between their legs" and "moved his fingers," and he "stopped" only when he noticed that his conduct had been observed.  An examination of all of the circumstances reasonably supported an inference of lewd intent.  Perhaps the opinion in *Mansell* was a product of its time, half a century ago, when our knowledge of child molestation was less developed.  Nevertheless, we feel compelled to point out its invalidity so that it does not continue to impact our jurisprudence on this issue.

Defendant contends that evidence of his touchings of the other Jane Does cannot support a finding of the requisite specific intent as to Jane Doe 2 because Evidence Code section 1108 evidence cannot by itself support a conviction.  Since the Evidence Code

section 1108 evidence was not alone in supporting the two lewd act counts involving Jane Doe 2, this contention lacks its premise.

Finally, defendant maintains that the evidence does not support *two* counts, rather than one, because, in his view, "Jane Doe 2 did not describe two separate instances . . . ." He cites neither Jane Doe 2's testimony nor any legal authority to support this claim. In fact, Jane Doe 2 described three separate touchings. She testified that the two touchings that occurred while she was on the swing occurred on two different days in 2013, "a few days" apart. And her testimony about the touching that occurred when she was standing next to the tree made clear that it too occurred on a separate occasion. We reject defendant's challenge to the sufficiency of the evidence to support the two lewd act counts involving Jane Doe 2.

### b. Jane Doe 1

Defendant claims that there was insufficient evidence of force to support the forcible lewd act count involving Jane Doe 1.

"A defendant uses 'force' if the prohibited act is facilitated by the defendant's use of physical violence, compulsion or constraint against the victim other than, or in addition to, the physical contact which is inherent in the prohibited act." (*People v. Bolander* (1994) 23 Cal.App.4th 155, 163 (Mihara, J. concurring).) "The evidentiary key to whether an act was forcible is not whether the distinction between the 'force' used to accomplish the prohibited act and the physical contact inherent in that act can be termed 'substantial.' Instead, an act is forcible if force facilitated the act rather than being merely incidental to the act." (*Id.* at pp. 163-164.) "[A]cts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves" are sufficient to support a finding that the lewd act was committed by means of force. (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005.)

Defendant's version of the facts in his brief bears no resemblance to Jane Doe 1's actual testimony about the circumstances of his forcible lewd act on her. She testified

16

that he came up behind her, picked her up, held her body against his, threw her over his shoulder, overcame her resistance, and carried her behind the tree. Jane Doe 1 testified that defendant held her in such a manner that she could not move while he positioned her up against the trunk of the tree and penetrated her private parts with his finger. This testimony amply established that defendant used force to facilitate the lewd act, rather than merely incidentally touching Jane Doe 1 in the course of the lewd act. Defendant's contention lacks merit. His reliance on *People v. Schulz* (1992) 2 Cal.App.4th 999 (*Schulz*) is misplaced because this court's brief discussion of force in that case was dicta since this court held that there was substantial evidence of duress. (*Schulz*, at pp. 1004-1005.) In this case, defendant's "grabbing, holding, and restraining" of Jane Doe 1 to facilitate his lewd act was substantial evidence of the requisite force.

Defendant contends that there was not substantial evidence to support *two section 288 counts* involving Jane Doe 1. As to Jane Doe 1, defendant was convicted of one section 288, subdivision (a) count, one section 288, subdivision (b) count, and one section 288.7 count. It was undisputed at trial that the two section 288 counts were based on a single act. The Attorney General properly concedes that the section 288, subdivision (a) count cannot be upheld as it is a lesser included offense of the section 288, subdivision (b) count. (*People v. Chan* (2005) 128 Cal.App.4th 408, 421.) We will direct the superior court to strike the section 288, subdivision (a) count involving Jane Doe 1.

### 2. Criminal Threats Counts

Defendant challenges the sufficiency of the evidence to support the two criminal threats counts.

"In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if

there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228 (*Toledo*).)

### a. Jane Doe 1

Defendant argues that his threat to Jane Doe 1 did not satisfy the third element of a criminal threat because "for Jane Doe 1, the threat was hypothetical, that appellant would only 'try' to hurt her family."

While defendant was holding her and molesting her, Jane Doe 1 told defendant "I will tell my parents," and he removed his hand and replied that he would "try to hurt my family." Jane Doe 1 was "scared," and she pushed defendant away, "threw myself to the ground," and ran away. She did not tell her parents because she was "scared" that defendant "might hurt my parents," and she told the police that she had not disclosed the molestation because defendant "was going to harm her family."

The third element of a criminal threat requires that the threat be " 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat.' " (*Toledo*, *supra*, 26 Cal.4th, at p. 228.) "The statute punishes those threats which *convey to the victim* a gravity of purpose and an immediate prospect of execution. The use of the word 'so' indicates that unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey

18

gravity of purpose and immediate prospect of execution to the victim. The four qualities are simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim." (*People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1157-1158, italics added; accord *People v. Bolin* (1998) 18 Cal.4th 297, 339.)

Jane Doe 1's testimony was sufficient to establish that defendant's threat *conveyed to her* "a gravity of purpose and an immediate prospect of execution." Her immediate response to the threat was to become "scared" and run away, and she kept the touching secret for a very long time until defendant no longer appeared to pose a threat to her family. Under these circumstances, the third element of this criminal threat count was satisfied.

### b. Jane Doe 2

Defendant argues that there was no evidence that he made a criminal threat because, he claims, Jane Doe 2 "admitted that appellant simply told her not to tell, and that the idea of the threat came from Jane Doe 1, who told Jane Doe 2 that appellant would hurt her family if she told."

The record does not support defendant's claim. Jane Doe 2 initially testified on direct examination: "Q. After this man touched you, did you tell your mom? [¶] A. No. [¶] Q. Why not? [¶] A. Because he said he was going to kill all my family. [¶] Q. How did you feel when he said that? [¶] A. With fear. [¶] Q. How long did you keep your secret? [¶] A. Because I didn't want him to kill my family." She subsequently testified on cross-examination: "Q. Did your friend [(Jane Doe 1)] ever tell you if you tell your parents Mr. Morales is going to hurt them? [¶] A. Yes."

On redirect, the prosecutor asked Jane Doe 2: "Who was the person who told you don't tell about touching or I'll hurt your family?" Jane Doe 2 responded: "The man." On recross, defendant's trial counsel returned to this subject: "Q. The man told you not to tell; right? [¶] A. Yes. [¶] Q. And . . . did you tell your friend about that? [¶] A.

19

Yes. [¶] Q. And she told you not to tell because he might hurt your family; right?" Jane Doe 2 responded: "Yes." On further redirect, the prosecutor sought clarification: "Q. What did the man tell you would happen if he told -- if you told he had touched you? [¶] A. That he was going to kill them. [¶] A. Kill them who? [¶] A. My family."

Thus, the record demonstrates that Jane Doe 2 repeatedly testified that it was *defendant* who told her that he would kill her family if she told anyone that he had touched her. It was only after Jane Doe 2 told Jane Doe 1 about defendant's threat that Jane Doe 1 confirmed the validity of that threat. Since the record rebuts defendant's challenge, we reject it.[11]

### 3. Dissuading Counts

Defendant argues that the two dissuading counts "were simply based on evidence that he told or threatened Jane Does 1 and 2 not to tell their parents." In his view, "[t]his does not fall into any of the specific statutory definitions set forth in section 136.1. Accordingly, appellant could not have been convicted under this section for such actions, and there was no evidence that he did anything else that would have qualified as 'dissuading' under Penal Code section 136.1."

"[E]very person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] (1) Making any report of that victimization

---

[11] Defendant also seems to assert that as to both Jane Doe 1 and Jane Doe 2 the criminal threats counts are not supported by substantial evidence because the girls did not provide "any further details about appellant's alleged threat, such as when he would try to hurt family members and how he might go about trying to do this." Since he does not support this assertion with citations to the record or authority, we need not consider it. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) In any case, the testimony of Jane Doe 1 and Jane Doe 2 provided substantial evidence of every element of the criminal threats counts, so defendant's challenge fails.

to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge."[12] (§ 136.1, subd. (b).)

Defendant claims that his threat to kill the families of Jane Does 1 and 2 if they told anyone did not amount to an attempt to "dissuade" either of them from "[m]aking any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge." He argues that his threat was limited to dissuading them from telling "their parents."

Defendant's claim is inaccurate with respect to Jane Doe 2. She testified that defendant threatened to kill her family if she "told." She did not testify that this threat was limited to telling her family. Jane Doe 1 did testify that defendant made his threat after she said she would *tell her parents*, but the context of the threat made clear that defendant was attempting to dissuade her not just from telling her parents but also from telling the police and that Jane Doe 1 understood it as such. The evidence is sufficient to support both dissuading counts.

## C. Prosecutorial Misconduct

Defendant claims that the prosecutor committed prejudicial misconduct in her rebuttal argument by commenting on his courtroom conduct during the trial.

---

[12] Defendant was charged with dissuading by force or threat of force in violation of section 136.1, subdivision (c)(1). "(c) Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances: [¶] (1) Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person." (§ 136.1, subd. (c)(1). He does not challenge the threat of force element of the dissuading counts.

21

## 1. Background

Jane Doe 3 testified that she conversed with defendant in English. During her cross-examination of Jane Doe 3's mother, defendant's trial counsel elicited her testimony that defendant spoke both Spanish and English and that she had conversed with him in English. Neither Jane Doe 3 nor her mother spoke Spanish. Jane Doe 2 and Jane Doe 1 spoke both English and Spanish. Jane Doe 1 testified that she and defendant conversed in Spanish. Defendant's police interview was conducted in Spanish. Throughout the trial court proceedings, defendant was assisted by a Spanish language interpreter.

The court instructed the jury before closing arguments. It told them: "Evidence is the sworn testimony of witnesses, the exhibits admitted into evidence and anything else I've told you to consider as evidence. [¶] Nothing the attorneys say is evidence. In their opening statements and closing arguments the attorneys discuss the case. But their remarks are not evidence."

Defendant's trial counsel's closing argument highlighted the fact that Jane Doe 3 did not speak Spanish. "[S]he told you here in court that my client said something along the lines of do you like that. And you heard us asking her whether she spoke Spanish or not; whether the mom spoke Spanish or not; whether the grandpa spoke Spanish or not. It was a very decisive absolutely not. *You see, though, my client is a Spanish speaker.* So that in 2004 that my client would have asked Jane Doe whether she likes that or whether it felt good is not possible. She didn't speak Spanish. He didn't speak English." (Italics added.)

The prosecutor addressed this part of defendant's trial counsel's argument in her rebuttal argument. "Now, a couple of other things that [defendant's trial counsel] raised that I don't think came into evidence that I want to make clear. We don't know that the defendant does not speak English. We don't have evidence of that. We have Jane Doe Number Three's same statement. He said a couple of things to her like does this feel

22

good.  Or do you like this.  We have his statement to the officer during the interview that he speaks a few words of English.  We also have the fact that Jane Doe One was testifying in English, with me in English, *I think he kept pulling his head set off.*  So we don't know to what level this gentleman speaks English.  That's something that simply did not come in."  (Italics added.)  Defendant's trial counsel raised no objection.

## 2.  Analysis

The Attorney General argues that defendant forfeited this contention because his trial counsel did not object to the prosecutor's comment.  Defendant contends that the prosecutor's comment was "uncomfortably close to" a prosecutorial comment on defendant's failure to testify and therefore should not require an objection.

The prosecutor's comment was not similar to a comment on defendant's failure to testify.  Instead, the prosecutor's comment was a brief, mild, improper response to defendant's trial counsel's improper argument concerning defendant's ability to speak or understand English.  No evidence, other than Jane Doe 3's testimony, had been presented to the jury that defendant had or lacked the ability to speak or understand English.  Defendant's trial counsel asked the jury to disbelieve Jane Doe 3's testimony about defendant's comments based on an inference that defendant could not speak English arising from his use of a Spanish interpreter during the trial.  This was improper.  The prosecutor asked the jury to reject that argument because, she claimed, he had removed his headset during a portion of trial, inferentially demonstrating his ability to understand English.  This too was improper.  If an objection had been made, the trial court would have been required to admonish the jury to disregard both improper comments, thereby leaving the jury to evaluate defendant's English abilities solely in light of Jane Doe 3's testimony.  It is inconceivable that defendant would have benefitted from such an admonition.  Hence, his trial counsel's failure to object was likely strategic, and any error or deficiency was undoubtedly harmless.  The few words of English that Jane Doe 3 testified defendant had spoken to her a decade prior to trial did suggest that he harbored a

23

sexual intent, but his actions towards her were not remotely ambiguous. Defendant, an adult male neighbor, unzipped a little girl's pants, put his finger inside the zipper over her underwear, and rubbed her vagina. We reject defendant's contention.

### D. Sentencing Issues

#### 1. Life Term for Section 288.7 Count

Defendant asserts that the trial court erred in imposing a life term for the section 288.7 count because section 288.7 is not listed in section 667.61 as one of the offenses for which a life term may be imposed.

Section 288.7, subdivision (b) provides: "Any person 18 years of age or older who engages in oral copulation or sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger is guilty of a felony *and shall be punished by imprisonment in the state prison for a term of 15 years to life*." (§ 288.7, subd. (b), italics added.) Hence, the 15 years to life term imposed for the section 288.7 count was statutorily mandated by section 288.7, subdivision (b). The fact that section 288.7 is not listed in section 667.61 is irrelevant and does not establish that the trial court erred in imposing a 15 years to life term for the section 288.7 count.

#### 2. Life Term for Section 288 Count Involving Jane Doe 3

Defendant contends that the trial court erred in imposing a life term for the section 288, subdivision (a) count involving Jane Doe 3 because that offense occurred in 2004, before section 667.61 was amended to apply to *all* section 288, subdivision (a) offenses.

The 1998 version of section 667.61, which was in effect in 2004, provided that section 667.61 applied to "(7) A violation of subdivision (a) of Section 288, unless the defendant qualifies for probation under subdivision (c) of Section 1203.066." (Stats. 1998, ch. 936, § 9.) In 2004, the 1997 version of section 1203.066 was in effect. Subdivision (a) of that statute provided: "Notwithstanding Section 1203 or any other law, probation shall not be granted to, nor shall the execution or imposition of sentence

24

be suspended for, nor shall a finding bringing the defendant within the provisions of this section be stricken pursuant to Section 1385 for, any of the following persons:  [¶] . . . [¶] (7) A person who is convicted of committing a violation of Section 288 or 288.5 against more than one victim."[13]  (Stats. 1997, ch. 817, § 13.)

Subdivision (d) of the 1997 version of section 1203.066 provided:  "The existence of any fact that would make a person ineligible for probation under subdivision (a) shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the jury trying the issue of guilt or by the court where guilt is established by plea of guilty or nolo contendere or by trial by the court sitting without a jury." (Stats. 1997, ch. 817, § 13.)  The accusatory pleading in this case did not allege that defendant was ineligible for probation for the section 288 count against Jane Doe 3, but it did allege the "fact that would make a person ineligible for probation."  That is, the information alleged that defendant "has been convicted in the present case of committing an offense against more than one victim."  This allegation was found true by the jury.  It follows that defendant fell within section 667.61 as it read in 2004 and could properly be sentenced to a life term for the section 288, subdivision (a) count involving Jane Doe 3. (See *People v. Woodward* (2011) 196 Cal.App.4th 1143, 1149-1153.)

### 3.  Imposition of Multiple Life Terms Under Section 667.61

Defendant maintains that the trial court erred in imposing multiple life terms under section 667.61 because, in his view, section 667.61's multiple victim circumstance "authorizes only one life term for qualifying offenses against more than one victim on multiple separate occasions."

---

[13]     This paragraph "shall not apply" where the court "makes all of the following findings:  [¶]  (1) The defendant is the victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in the victim's household." (Stats. 1997, ch. 817, § 13.)  Defendant does not claim that this exception applied or that its inapplicability had to be alleged in the information.

The court imposed one life term for the forcible lewd act count against Jane Doe 1, two life terms for the two lewd act counts against Jane Doe 2, and one life term for the lewd act count against Jane Doe 3.[14] Defendant claims that there should have been just one life term rather than four for these counts. Every court that has ever considered this issue has rejected defendant's contention that section 667.61 does not permit multiple life terms to be imposed based on the multiple-victims circumstance.

In *People v. DeSimone* (1998) 62 Cal.App.4th 693 (*DeSimone*), the Second District Court of Appeal rejected the defendant's argument that section 667.61 permits only one life sentence *per case* based on the multiple-victims circumstance. It held that section 667.61 "applies to any conviction of a qualifying sexual offense when the defendant stands currently convicted of at least one other such offense against a different victim. It does not include any language which specifically provides that unlike all the other enumerated circumstances in the One Strike law, it [(the multiple-victims circumstance)] may be used only once in a particular case."[15] (*DeSimone*, at pp. 697-698.) In *People v. Murphy* (1998) 65 Cal.App.4th 35 (*Murphy*), the Second District held

---

[14] The court imposed 15 years to life terms for each lewd act count, for the forcible lewd act count, and for the sexual penetration count. The sentence for the lewd act count against Jane Doe 1 was stayed "as his conduct is the same conduct" as the forcible lewd act count against Jane Doe 1. We have already decided that this lewd act count must be stricken because it was a lesser included offense of the forcible lewd act count. Since the sexual penetration count did not qualify for sentencing under section 667.61 and a life term was proper imposed under section 288.7, the only life terms at issue here are the four life terms imposed for the forcible lewd act count against Jane Doe 1, the two lewd act counts against Jane Doe 2, and the lewd act count against Jane Doe 3.

[15] The Second District did not consider in *DeSimone* whether more than one life term could be imposed under section 667.61 based on the multiple-victims circumstance for multiple offenses against a single victim. (*DeSimone*, *supra*, 62 Cal.App.4th at p. 698, fn. 2 ["We are not called upon to consider whether the subdivision (e)(5) circumstance could attach to more than one count involving the same victim. Our discussion here is limited to whether it is proper to impose one life term per victim under subdivision (e)(5)."].)

26

that, where the section 667.61 multiple-victims circumstance is found true, "[t]he only limitation on the number of life sentences which can be imposed is contained in section 667.61 subdivision (g), which provides that the defendant shall be sentenced to *one life term per victim per occasion* no matter how many offenses listed in subdivision (c) the defendant committed against a particular victim on a particular occasion." (*Murphy*, at p. 40, italics added.) *Murphy* involved two separate victims, one of whom was the victim of multiple offenses on a single occasion. Hence, the defendant was eligible for only two life terms.[16] (*Murphy*, at pp. 40-41.)

In *People v. Valdez* (2011) 193 Cal.App.4th 1515 (*Valdez*), the defendant was convicted of seven lewd act counts against three victims, and a section 667.61 multiple-victims allegation was found true. (*Valdez*, at p. 1518.) The trial court imposed four life terms, which included two life terms for offenses against a single victim on multiple occasions. (*Valdez*, at pp. 1518-1520.) The defendant claimed that section 667.61's multiple-victims circumstance could not support the imposition of multiple life terms for offenses against a single victim. (*Valdez*, at p. 1518.) The Second District rejected this claim on the ground that it "contradicts the statute's legislative intent as determined by the usual and ordinary meaning of the words of the enactment." (*Valdez*, at p. 1522.)

We agree with these cases. And it is worth noting that, while the California Supreme Court has never ruled on this issue, it has cited *DeSimone* with apparent approval and noted that section 667.61 "contemplates a separate life term for each victim attacked on each separate occasion." (*People v. Wutzke* (2002) 28 Cal.4th 923, 931.) In the end, it is the statutory language that prevails.

---

[16] *People v. Stewart* (2004) 119 Cal.App.4th 163 (*Stewart*), another Third District case, agreed with *Murphy* and held that, under section 667.61, subdivision (g), the defendant could not be subjected to three life terms for three offenses against the same victim on the same occasion. (*Stewart*, at p. 174.)

The 1998 version of section 667.61, which was in effect when defendant's offense against Jane Doe 3 occurred, provided: "The [life] term specified in subdivision (a) or (b) shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. If there are multiple-victims during a single occasion, the term specified in subdivision (a) or (b) shall be imposed on the defendant once for each separate victim. Terms for other offenses committed during a single occasion shall be imposed as authorized under any other law, including Section 667.6, if applicable." (Stats. 1998, ch. 936, § 9.) By providing that "[t]he [life] term . . . shall be imposed on the defendant once for any offense . . . against a single victim during a single occasion," this version of section 667.61 mandated a term of 15 years to life for defendant's lewd act on Jane Doe 3.

The current version of section 667.61, which was in effect when defendant committed the counts against Jane Doe 1 and Jane Doe 2, does not contain the language that used to be in subdivision (g). Instead, current subdivision (j)(2) provides: "Any person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), upon a victim who is a child under 14 years of age, shall be punished by imprisonment in the state prison for *25 years to life*." (§ 667.61, subd. (j)(2), italics added.)

We requested supplemental briefing from the parties addressing whether the trial court's imposition of 15 years to life terms for the three lewd act counts against Jane Doe 1 and Jane Doe 2 rather than 25 years to life terms was an unauthorized sentence. Defendant responded by conceding that the trial court had erred in this regard.[17] The

_____

[17] Defendant's appellate counsel also attempted to raise several previously unbriefed sentencing issues in his supplemental letter brief. We struck that portion of his letter brief since the Attorney General had never had an opportunity to address those issues, which had not been raised in defendant's opening or reply briefs, and they were not within the scope of our request for briefing. Although defendant's appellate counsel

28

Attorney General agreed and asked us to "modify the judgment" and "direct the superior court to modify the abstract of judgment accordingly."

We accept defendant's concession, but we decline the Attorney General's invitation to simply modify the trial court's judgment. Since the trial court did not contemplate 25 years to life terms for these counts, we cannot determine whether it would have structured defendant's sentence differently under these circumstances. Hence, we must remand to the trial court for resentencing. Because the trial court may reconsider all aspects of defendant's sentence on remand, it would be premature for us to consider whether defendant's sentence is unconstitutionally cruel and unusual.[18]

## III. Disposition

The judgment is reversed, and the matter is remanded with directions to strike the section 288, subdivision (a) count involving Jane Doe 1 and to resentence defendant.

---

sought (in a footnote in the supplemental brief) leave to file a supplemental brief on these additional issues, we denied leave. Since we are remanding this matter to the trial court for resentencing, any contentions regarding the application of section 654, consecutive sentencing, or cruel and unusual punishment may be addressed at the resentencing hearing.

[18] At the sentencing hearing, the court characterized defendant as "certainly a danger," said "I'm not sure that menace is even a strong enough word," and concluded that defendant was "an individual who does need to be excised from our community permanently." The court identified numerous circumstances in aggravation and gave multiple reasons for selecting consecutive sentences.

_____

Mihara, J.

WE CONCUR:



_____

Greenwood, P. J.



_____

Elia, J.



People v. Morales
H043837

30

Trial Court:                                    Monterey County Superior Court


Trial Judge:                                    Honorable Julie R. Culver


Attorneys for Defendant and Appellant:          Law Offices of Beles & Beles
                                                Robert J. Beles
                                                Paul McCarthy
                                                Manisha Daryani


Attorneys for Plaintiff and Respondent:         Xavier Becerra
                                                Attorney General of California

                                                Gerald A. Engler
                                                Chief Assistant Attorney General

                                                Jeffrey M. Laurence
                                                Senior Assistant Attorney General

                                                Seth K. Schalit
                                                Supervising Deputy Attorney General

                                                Michael Chamberlain
                                                Deputy Attorney General


People v. Morales

H043837